# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DANIEL P. CORBETT,**  Chapter 7
   Debtor  Case No. 11-13667-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Objection to Exemption Pursuant to 11 U.S.C. § 522(o) filed by Nathanson & Goldberg, a Professional Corporation ("N&G"), as the assignee of Joan Skomurski ("Skomurski"), a creditor of the Debtor.[1] N&G objects to the claim of an exemption by Daniel P. Corbett (the "Debtor") with respect to his residence located at 3 Mustang Circle, Danvers, Massachusetts (the "Danvers residence" or the "property") on grounds that "on May 8, 2007 and on October 31, 2007, a date less than ten (10) years before commencing his case, Debtor had a deed transferring his interest in said Residence recorded

---

[1] The Assignment and Transfer of Claim is attached to Skomurski's proof of claim and is dated March 30, 2012.

with the intent to hinder, delay, or [defraud] one or more creditors, and on said date Debtor could not exempt the Residence." The Debtor filed an Opposition to N&G's Objection, and the Court heard the matter on June 4, 2012.

The material facts necessary to decide this contested matter are not in dispute. Following the hearing, the parties filed a "Stipulation as to Facts," and neither party requested an evidentiary hearing. Accordingly, the Court makes the following findings of fact and conclusions of law.

**II. FACTS**

The parties' stipulated facts, as supplemented with reference to exhibits and the record of proceedings in the Debtor's bankruptcy case, are reproduced below.

The Debtor filed a voluntary Chapter 7 case on April 22, 2011.[2] On Schedule A-Real Property, the Debtor listed his Danvers residence, describing his interest as "court order debtor as owner 9/10 Essex Superior Court by Skomursky litigation [sic]." On Schedule C-Property Claimed as Exempt, the Debtor listed his Danvers residence as exempt pursuant to Mass. Gen. Laws c. 188, § 1. He indicated that the value of his exemption was $322,818.09 and that the current value of his residence without deducting the value of his exemption was $613,000.00. He also claimed as exempt a payment in the sum of $350,000 to Skomurski within 90-days of the commencement of his case pursuant to Mass. Gen. Laws ch. 235, §

---

[2] The Court takes judicial notice of the docket in the Debtor's Chapter 7 case. *See* Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1st Cir. 1999).

34(15).[3] On Schedule F-Creditors Holding Unsecured Nonpriority Claims, he listed Skomurski as the holder of a claim in the sum of $375,000 and N&G as the holder of a claim in the sum of $47,000 for "court ordered payment for legal services to Skomursky [sic] on litigation."

On or around September 15, 2008, approximately two and one half years before the Debtor commenced his Chapter 7 case, Skomurski filed a four-count complaint against the Debtor, his spouse, Cheryl A. Corbett ("Cheryl"), and others in the Essex Superior Court Department of the Trial Court, seeking, among other things, a judgment for the unpaid balance due under a note, dated October 24, 2007, and note modification agreement, dated June 10, 2008, in the amount of $520,000 plus interest from August 12, 2008, together with reasonable attorney's fees and costs. Skomurski also sought a declaration that the transfer of the Danvers residence by deed dated October 26, 2007 and recorded on October 31, 2007 by the Debtor to Cheryl for consideration of $1.00 was fraudulent and an order requiring Cheryl to sign, seal and deliver a deed transferring that property to the Debtor, with a judgment entered against her for the amount of any equity fraudulently transferred by the Debtor to her. On January 12, 2009, the Superior Court issued a preliminary injunction preventing the Debtor "from transferring, assigning, selling, pledging, encumbering or

---

[3] The Debtor omitted that claimed exemption in an Amended Schedule C filed on May 31, 2012. In his Statement of Financial Affairs, the Debtor stated that the nature of the litigation with Skomurski was "commercial paper -Debtor paid $350,000 on $756,978.86 judgment within 90 days of this Petition which may be a Preference (Sec. 547)." On January 19, 2012, the Chapter 7 trustee commenced an adversary proceeding against Skomurski to recover a transfer in the sum of $350,000 pursuant to 11 U.S.C. §§ 547 and 550.

otherwise hypothecating any real property and personal property owned by him in which he has an interest up to the first $550,000 . . . ." On January 14, 2009, the Superior Court issued a Memorandum of Lis Pendens with respect to the Danvers residence which was subsequently recorded.

On August 3, 2010, the Superior Court (Roach, J.) issued a Memorandum containing detailed findings of fact and rulings of law.[4] N&G stated in its Supplemental Memorandum that those findings and conclusions embodied in a judgment entered on September 22, 2010, are entitled to preclusive effect as they relate to its Objection. Although the Debtor appealed the judgment, he later withdrew the appeal following mediation which resulted in the $350,000 payment to Skomurski.

According to the Superior Court, the Debtor and his spouse acquired the Danvers residence, as tenants by the entirety, by deed recorded on March 20, 1996. The following chart summarizes transfers with respect to the property.

---

[4] The Superior Court in its Memorandum of Findings and Rulings stated:

> This matter involves former business partners who severed their professional relationship, in part due to allegations of an inappropriate personal relationship. Plaintiff Skomurski and Defendant Corbett entered into a series of agreements in 2007-2008 which purported to: 1) compensate her for, and provide full release of, "sexual harassment/sexual assault and other related claims"; and 2) sever their business holdings by additional payments from Corbett and transfer of interests by Skomurski.

The decision contains no information about when the conduct giving rise to Skomurski's harassment claims occurred.

| DATE of RECORDATION | TRANSFEROR(S) | TRANSFEREE(S) |
|---|---|---|
| 5/1/1997 | Debtor and Cheryl Corbett | 3 Mustang Circle Trust |
| 7/28/1997 | Cheryl Corbett, Trustee | Debtor and Cheryl Corbett as tenants by the entirety |
| 8/19/1997 | Debtor and Cheryl Corbett | 3 Mustang Circle Trust |
| 3/23/2000 | Cheryl Corbett[5] | 3 Mustang Circle Trust |
| 2/4/2005 | Cheryl Corbett, Trustee [6] | Debtor |
| 5/8/2007 | Debtor, Trustee[7] | Cheryl Corbett |
| 10/31/2007 | Debtor | Cheryl Corbett |

Cheryl recorded a declaration of homestead pursuant to Mass. Gen. Laws ch. 188, § 1 on March 1, 2011. Shortly thereafter, the Debtor recorded a declaration of homestead on March 16, 2011.

The Superior Court found that Cheryl "has purportedly been the Trustee and sole beneficiary of the 3 Mustang Circle Trust, adding that "[t]he Corbetts have no writing

---

[5] It would appear that Cheryl had no interest in the Danvers residence because she previously had transferred her interest to the trust. Because she was both sole trustee and sole beneficiary of the trust, she had obtained her "interest" in the Danvers residence by virtue of the August 19, 1997 transfer. See In re Szwyd, 346 B.R. 290, 293 (Bankr. D. Mass. 2006), aff'd, 370 B.R. 882 (B.A.P. 1st Cir. 2007); Vittands v. Sudduth, 49 Mass. App. Ct. 401, 409 ((2000)("Despite a nominee trust's nontraditional relationship between trustee and beneficiary, such a trust must still adhere to the rule that no trust exists when the same individual is the sole settlor, sole trustee, and sole beneficiary.").

[6] In view of the Superior Court's finding that Cheryl was the sole trustee and beneficiary of the 3 Mustang Circle Trust, her conveyance of the Danvers residence to the Debtor on February 4, 2005 resulted in his sole ownership of the property at that time.

[7] As noted below, the Superior Court did not find evidence that the Debtor served as trustee of the 3 Mustang Circle Trust.

evidencing the 3 Mustang Circle Trust." Additionally, it found that Cheryl never functioned as trustee of the Trust and simply signed documents placed in front of her at the Debtor's direction. The Superior Court also determined that there was no evidence the Debtor was a trustee of the 3 Mustang Circle Trust, "[a]ssuming such entity ever existed."[8]

According to the Superior Court, the conveyance made by the Debtor in October of 2007 occurred approximately three months after the Debtor entered into his first settlement agreement with Skomurski, dated July 10, 2007, and two days after the Debtor entered into a second settlement agreement with Skomurski, dated October 24, 2007 (the deed was dated October 26, 2007; it was recorded on October 31, 2007).

The Superior Court also determined that the Debtor had other significant obligations at the time he entered into settlement agreements with Skomurski and that there was no consideration for the multiple transfers of the Danvers residence. While noting that actual intent to defraud may be proven through circumstantial evidence, it added that "[a] plaintiff need not prove actual fraud or intent," citing Ward v. Grant, 9 Mass. App. Ct. 364, 367 (1980)("'(O)ne deeply in debt, who by a voluntary conveyance puts all his property out of the reach of his creditors, is presumed to intend the natural consequence of such a transfer which is to hinder, delay or defraud his creditors, even if he had no such actual intent and even if the voluntary grantee was ignorant of the insolvency of the grantor or of any presumed or actual intent of his to prevent his creditors from applying the property to the payment of their claims.'"). The Superior Court concluded that the transfers of 3 Mustang

---

[8] *See* note 5 *supra.*

6

Circle were an effort to remove the marital home from the reach of the Debtor's creditors and that "[e]ach of these putative transfers of 3 Mustang Circle is accordingly void." The court stated: "Corbett is the true owner of 3 Mustang Circle, as evidenced by the February 2005 deed . . . ." In its judgment, the Superior Court determined that the transfer by the Debtor to Cheryl by deed dated October 26, 2007 and recorded on October 31, 2007 was a fraudulent transfer and that "the owner of that property is Daniel P. Corbett, whose interest is to be reached and applied" on account of the judgment in the sum of $520,000 entered on Count I of Skomurski's complaint. The Superior Court ordered Cheryl "to forthwith sign, seal and deliver a deed to the plaintiff or her attorney of 3 Mustang Circle, Danvers, MA naming Daniel P. Corbett, as grantee, with plaintiff being entitled to reach and apply his interest in 3 Mustang Circle, Danvers, MA by a sheriff's sale of the property at public auction." The Superior Court also entered a permanent injunction against the Debtor from transferring, assigning, selling, pledging, encumbering or otherwise hypothecating any real property and personal property owned by him or in which he has an interest including 3 Mustang Circle with the exception that if he sought to liquidate property for the express purpose of satisfying his obligation to Skomurski, any proceeds from such a sale were to be paid first to Skomurski to satisfy the judgment.

Following the Superior Court's judgment, the parties mediated their dispute and entered into an agreement on December 1, 2010, which they executed on January 31, 2011. Following payment of $350,000 to Skomurski pursuant to the terms of the parties' agreement, the Debtor dismissed his appeal from the Superior Court judgment.

In sum, the Superior Court determined that the Debtor owned a 100% beneficial interest in the Danvers residence from February 4, 2005 when Cheryl, acting as trustee of the 3 Mustang Circle Trust, conveyed the property to him. Cheryl, however, neither executed a deed conveying legal title to the Danvers residence to the Debtor, as grantee, nor delivered such a deed to Skomurski to enable her to reach and apply the Debtor's interest by a sheriff's sale of the property by public auction prior to the commencement of the Debtor's Chapter 7 case.

Upon consideration of the findings of fact and rulings of law made by the Superior Court, this Court concludes that the 3 Mustang Circle Trust was a sham. To the extent that Cheryl purported to be the sole trustee and sole beneficiary, as the Superior Court recognized, there was a merger of the legal and beneficial interests such that a conveyance to the 3 Mustang Circle Trust would have been a conveyance to Cheryl Corbett outright. *See* In re Szwyd, 346 B.R. 290, 293 (Bankr. D. Mass. 2006), *aff'd,* 370 B.R. 882 (B.A.P. 1st Cir. 2007); Vittands v. Sudduth, 49 Mass. App. Ct. 401, 409 ((2000). Accordingly, in August of 1997, the Debtor and Cheryl transferred the property to Cheryl and then, on February 4, 2005, she conveyed the property to the Debtor. The October 31, 2007 conveyance by the Debtor to Cheryl was voided by the Superior Court, resulting in its ruling that the Debtor owned the property outright from 2005.

### III. POSITIONS OF THE PARTIES

A. N&G

N&G maintains that because the Debtor disposed of and transferred his interest in

the Danvers residence in October of 2007 with intent to hinder, delay, or defraud Skomurski, he could not exempt his interest in the property pursuant to Mass. Gen. Laws ch. 188, § 1 because neither he nor Cheryl recorded homesteads until 2011. It adds that the Debtor was not the owner of record of the residence when he purported to record his homestead and that pursuant to the Superior Court's judgment Cheryl was ordered to deliver a deed to Skomurski or her attorney naming the Debtor as grantee. N&G states that no deed was ever executed or recorded from Cheryl to the Debtor and that pursuant to Mass. Gen. Laws ch. 188, § 3(6),

> no homestead exemption is granted "upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud . . . ." Since the within Judgment for which an execution was issued was based on fraud or a fraudulent transfer, the Residence of the Debtor would have been exempt from any homestead protection.

In other words, N&G maintains that the Debtor is not entitled to a homestead under state law.

In its Supplemental Memorandum, N&G specifically addresses 11 U.S.C. § 522(o) while asserting that the doctrine of issue preclusion applies to prevent challenge to the findings and rulings of the Superior Court pertinent to its Objection and that the residence cannot be exempted by the Debtor. It states:

> When a debtor's right to an exemption is challenged on the grounds that the debtor converted non-exempt property to exempt property, the denial of the debtor's right to an exemption is appropriate under proof of a specific intent to defraud his creditors. . . . An examination of the Judgment of the State Court similarly shows a considered and carefully orchestrated series of maneuvers by the debtor prior to bankruptcy to defraud creditors, including Skomurski, in order to place property beyond the reach of creditors with an intent to defraud. Simply stated, the debtor in the within case ought not to be

9

rewarded with an exemption for perpetrating a scheme to defraud creditors and attempting to place property beyond the reach of creditors by a deliberate and fraudulent scheme.

B. The Debtor

Citing, inter alia, In re Kaska, No. 07-12568, 2009 WL 2929252 (Bankr. N.D.N.Y. Jan. 14, 2009), the Debtor argues that N&G must prove four elements to obtain an order reducing the value of his exemption, namely 1) that he disposed of property within 10 years preceding the filing of his bankruptcy petition; 2) that the property he disposed of was nonexempt; 3) that some of the proceeds of the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and 4) that he disposed of the nonexempt property with the intent to hinder, delay, or defraud a creditor. The Debtor maintains that N&G cannot satisfy all of the elements because there is no evidence that he used proceeds from the sale of the Danvers residence (assuming it was nonexempt) to purchase exempt property and because there was no proof that he disposed of property with the intent to hinder, delay, or defraud a creditor.

The Debtor also relies upon Cheryl's recorded homestead and N&G's reference only to the May 8, 2007 deed from the Debtor to his spouse. According to the Debtor, Cheryl, as an "innocent transferee" claimed a valid homestead exemption, which is not affected by N&G's objection. He further maintains the settlement agreement pursuant to which Skomurski was paid $350,000 terminated N&G's rights as to the property because it terminated the rights under the orders for injunctive relief. The agreement which the Debtor attached to his Opposition provided in part that "Joan Skomurski shall not seek to enforce

10

or exercise any of the plaintiff's rights under any current orders for injunctive relief until Jan. 21, 2011."

In his Supplemental Opposition, the Debtor admits that the relevant fraudulent transfers occurred on May 8, 2007 and October 26, 2007 and that the Superior Court determined that the Danvers residence has been vested in him since 2005. He adds that because recording a homestead is not a transfer and the recent recording of the homestead just prior to the filing "is the only relevant act relating to or affecting the title," claiming a homestead exemption does not trigger § 522(o). . . ." The Debtor reiterates his position that N&G did not establish the elements required to reduce his claimed exemption under Mass. Gen. Laws ch. 188.

The Debtor also emphasizes that the stated consideration for the transfers of the Danvers residence was $1 and the record is devoid of evidence that he used proceeds from the sale of the residence to purchase exempt property, as there was no sale. Additionally, he argues that the recordation of a homestead by Cheryl would protect the property, particularly where she continues to hold legal title to the property, despite the Superior Court judgment.

## IV. DISCUSSION

Regardless of whether the 3 Mustang Circle Trust or Cheryl was the owner of the property as a result of the August 19, 1997 transfer, it is clear that at that time the Debtor relinquished ownership of the property to his spouse. He subsequently gained full ownership of the Danvers residence on February 4, 2005. The Superior Court voided

11

subsequent conveyances. Thus, the Debtor's attempt to put the Danvers residence beyond the reach of his creditors was reversed by the Superior Court and Skomurski's ability to collect her judgment was enhanced. The Debtor's acquisition of the Danvers residence from Cheryl on February 4, 2005 was not a fraudulent transfer because it increased, rather than decreased, the value of the property available to satisfy claims of any creditors he may have had at that time.

Section 522(o) of the Bankruptcy Code provides the following:

[T]he value of an interest in—

> (1) real or personal property that the debtor or a dependent of the debtor claims as a residence; [or] . . .
>
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead . . .

shall be reduced to the extent that such value is attributable to any portion of *any property* that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and *that the debtor could not exempt*, or that portion that the debtor could not exempt, under subsection (b), *if on such date the debtor had held the property so disposed of.*

11 U.S.C. § 522(o)(emphasis supplied). The United States Bankruptcy Appellate Panel for the Tenth Circuit explained the background of § 522(o):

> The addition of § 522(o) to the Bankruptcy Code was "intended to strike a balance between the rights of debtors and creditors in states with unlimited homestead exemptions . . . and to make clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors." However, even after BAPCPA's amendments, "[s]ection 522 continues to adopt the position favorably viewed by the Code drafters that the mere conversion of nonexempt property into exempt property, without fraudulent intent, does not deprive the debtor of exemption rights in the converted property." Ultimately, it appears that the purpose of adding § 522(o) and § 522(p) in 2005 was the

> attempt by Congress to address the pre-BAPCPA "mansion loophole" and to limit the value of homestead exemptions when there is fraud. This lends support to our interpretation of § 522(o)—that the statute was enacted to prevent the fraudulent attempt to build up equity in a homestead.

Soulé v. Willcut (In re Willcut), 472 B.R. 88, 94 (B.A.P. 10th 2012)(footnotes omitted).

According to the court in In re Presto, 376 B.R. 554 (Bankr. S.D. Tex. 2007), a case involving a debtor who sold his previous homestead, purchased his current homestead on the same date for a lower price, and used some of the new, nonexempt proceeds from the sale of his former home to improve his newly acquired homestead,

> There are four elements to establishing an objection under § 522(o): (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing; (2) the property that the debtor disposed of was nonexempt; (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.

In re Presto, 367 B.R. at 568 (citing In re Sissom, 366 B.R. 677, 688 (Bankr. S.D. Tex. 2007)). The phrase "intent to hinder, delay or defraud a creditor" is similar to the language employed by Congress in 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2) and requires actual, as opposed to constructive, fraud. In re Sissom, 366 B.R. at 691-92. "[T]he phrase 'the value of an interest in . . . real [ ] property . . . shall be reduced' in 11 U.S.C. § 522(o) means that the equity in a debtor's home that was obtained through fraudulent transfer of non-exempt assets into exempt assets is to be reduced. If there is no equity, there is no value subject to reduction." In re Willcut, 472 B.R. at 97. The party objecting to a debtor's claimed homestead and seeking a reduction in amount pursuant to 11 U.S.C. § 522(o) has the burden of proof using a preponderance of the evidence standard. See Fed. R. Bankr. P. 4003(c).

Additionally, the Court concludes that the determination of whether the debtor could exempt "any property . . . disposed of" is determined on the petition date by virtue of the language of the statute.

Prior to BAPCPA, several circuit courts held that "the conversion of non-exempt to exempt property for the purpose of placing the property out of the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled." Marine Midland Business Loans, Inc. v. Carey (In re Carey), 938 F.2d 1073, 1076 (10th Cir. 1991)(citing, *inter alia,* Norwest Bank Neb., N.A. v. Tveten, 848 F.2d 871, 873-74 (8th Cir. 1988); Ford v. Poston, 773 F.2d 52, 54 (4th Cir. 1985)). *See also* NCNB Texas Nat'l Bank v. Bowyer (In re Bowyer), 932 F.2d 1100, 1102 (5th Cir. 1991); In re Agnew, 355 B.R. 276, 282-83 (Bankr. D. Kan. 2006). Absent actual intent to hinder, delay or defraud a creditor, the conversion of nonexempt property into exempt property prior to filing for bankruptcy simply represents the debtor's "use of the exemptions to which he is entitled under the law." In re Carey, 938 F.2d at 1076. Section 522(o) is Congress's means of adjusting the goal posts with respect to pre-bankruptcy exemption planning by balancing the rights of debtors and creditors in states with unlimited homestead exemptions and making clear that abusive pre-bankruptcy planning will not be tolerated at the expense of creditors. *See* In re Willcut, 472 B.R. at 94. Recording a homestead, however, which essentially is taking advantage of an exemption available under state law, does not fit within the meaning of the statute. *See* In re Lyons, 355 B.R. 387, 390 (Bankr. D. Mass. 2006)(citing In re Miller, 113 B.R. 98, 104 (Bankr. D. Mass. 1990)(recording a homestead is not a transfer under the Uniform

Fraudulent Transfer Act).

The Debtor transferred his interest in the tenancy by the entirety, for which he could have claimed an exemption under either state or federal law, *see* 11 U.S.C. § 522(b)(2) and (3), in August of 1997, when both he and Cheryl transferred the Danvers residence to the 3 Mustang Circle Trust (or, to the extent the merger doctrine applies and the trust is a nullity, to Cheryl). That conveyance destroyed the tenancy by the entirety and resulted in Cheryl's full ownership of the property due to the merger of legal and equitable title. The Debtor then caused Cheryl to convey the residence to him. The Debtor could have claimed his interest in the Danvers residence as exempt prior to the August 19, 1997 transfer, and he could have claimed, and did claim, an exemption in the Danvers residence as the owner of the property by virtue of the order of the Superior Court voiding the 2007 transfers. There is simply no evidence that the Debtor disposed of nonexempt property to increase the value of exempt property. The conveyance voided by the Superior Court was the Debtor's transfer of his interest in the Danvers residence to Cheryl for the purpose of avoiding Skomurski's ability to reach the property to satisfy the Debtor's obligation to her. That conveyance alone does not satisfy the required elements of § 522(o) as set forth by the bankruptcy courts in Presto and Sissom. Moreover, N&G's argument that Mass. Gen. Laws ch. 188, § 3(6) would prevent the Debtor from exempting the property is unavailing in light of the provisions of 11 U.S.C. § 522(c);[9] *See* Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677,

---

[9] Section 522(c) provides:

(c) Unless the case is dismissed, property exempted under this section is not

15

682 (1st Cir. 1999), *cert. denied,* 527 U.S.1036 (1999)(the Massachusetts prior debt exception is pre-empted by the Bankruptcy Code); Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 321 n.3 (1st Cir. 2008). The Debtor's obligation to Skomurski and Skomurski's judgment do not fall within any of the categories of debts listed in section 522(c).

---

> liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except--
>
> > (1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);
> >
> > (2) a debt secured by a lien that is--
> >
> > (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
> >     (ii) not void under section 506(d) of this title; or
> > (B) a tax lien, notice of which is properly filed;
> >
> > (3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or
> >
> > (4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).
>
> 11 U.S.C. § 522(c).

16

Accordingly, Mass. Gen. Laws ch. 188, § 3(6) does not preclude the Debtor from obtaining a valid homestead in view of the decision of the United States Court of Appeals for the First Circuit in Weinstein.

The paradigm for application of 11 U.S.C. § 522(o) is illustrated in In re Anderson, 386 B.R. 315 (Bankr. D. Kan. 2008), where, according to the Kansas bankruptcy court, the facts presented "a close case." The court observed the following:

> Anderson did not conceal the funds he used to pay down his homestead loan, nor did he fail to disclose the prepayments[.] He did convert these non-exempt assets to exempt status approximately three months before filing bankruptcy. He did so while . . . [a creditor's] . . . suit against him personally was pending, but no judgment had been entered against him. He retained use of the funds in the sense that he retains his home, but the funds were applied to his mortgage balance. By paying these funds on his mortgage and increasing his home equity, he essentially benefitted not only himself but his wife and any other family members who occupy the residence. He did not borrow these funds in the same sense as the debtor in Keck [Turner v. Keck (In re Keck), 363 B.R. 193 (Bankr. D. Kan. 2007)], but rather he liquidated non-exempt assets he already owned. Nor can it be said that Anderson participated in sharp dealing; rather, it appears that he became embroiled in a business concern that required more management skill and ability than he appears to have possessed. With respect to the insolvency badge, no firm evidence was presented by . . . [the creditor] . . . that the $240,000 transfer rendered debtor insolvent. The transfer was neutral in the sense that it did not alter debtor's balance sheet or net worth; it did convert non-exempt liquid assets to an exempt asset beyond the reach of creditors.
>
> ***
>
> When he was pressed for a reason why he paid down his mortgage instead of his creditors, Anderson responded "I don't know." While this may have "hindered" his creditors, in the absence of better evidence to the contrary, this Court cannot conclude that . . . [the creditor] . . . has demonstrated that he made this transfer with actual intent to hinder, delay or defraud. . . .
>
> This is a close case. It does not feature the blatant misconduct engaged in by the debtors in Lachute [In re Lachute, 342 B.R. 809 (Bankr. D. Mont.

> 2005)]where assets were concealed to prevent collection after insolvency caused by gambling losses, or Keck, where the debtor improved his homestead with the proceeds of credit card advances. Nor does it share the more benign fact pattern shown in Agnew [In re Agnew, 355 B.R. 276 (Bankr. D. Kan. 2006)], where the debtor was to have inherited the homestead property from his aged mother even before she transferred the land to him. Indeed, the Court heard no evidence of debtor's explanation for or purpose of the transfer that would shed light, one way or the other, on his actual intentions. While this is troubling to the Court, in the absence of direct or circumstantial evidence demonstrating his fraudulent intent by a preponderance of the evidence based upon the presence of the badges of fraud, this Court cannot sustain Salina Steel's objection.
>
> As another court has stated, "Substantial evidence of prebankruptcy planning to pay down a mortgage on a homestead using nonexempt assets is not sufficient [to] deny discharge, as actions to hinder, delay, or defraud creditors require something more." Other courts interpreting § 522(o) appear to agree. The circumstances here lack "something more." There is no reason to believe that case law interpreting the § 727(a)(2)(A) exception to discharge should not guide the courts interpretation and application of a § 522(o) objection. In short, the Court concludes that the debtor here did nothing more than take advantage of an exemption to which he is entitled. While his actions were intentional, the Court cannot find that they were done with the intent to hinder, delay or defraud.

386 B.R. at 330-31. A review of the court's decision in Anderson and its description of conduct that did result in application of section 522(o) compels the conclusion that N&G's position lacks merit. In the instant case, there simply is no evidence of prepetition exemption planning, let alone the conversion of non-exempt assets into exempt assets. The Superior Court avoided the fraudulent transfer that occurred with respect to the Danvers residence. There was no evidence or even a suggestion that the Debtor transferred nonexempt assets to increase the value of the homestead claimed in the Danvers residence with the intent to hinder, delay or defraud creditors.

To the extent that N&G relies on Mass. Gen. Laws ch. 188, § 3(6), 11 U.S.C. § 522(c)

and the decision of the United States Court of Appeals for the First Circuit in In re Weinstein compel the entry of an order overruling its Objection.

**IV. CONCLUSION**

In view of the foregoing, the Court shall enter an order overruling N&G's Objection to Exemption.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 30, 2012