# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DANIEL P. CORBETT,**                                    Chapter 7
        Debtor                                     Case No. 11-13667-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

On January 5, 2016, Cathleen E. Kavanagh, Trustee of the April Realty Trust ("Kavanagh"), filed a Request for Payment of Administrative Expense. Through the Request for Payment, Kavanagh seeks payment of "an administrative expense priority claim pursuant to 11 U.S.C. § 503(b) and § 507(a)(1)(C) and (a)(2) in an amount to be determined by the Court." Specifically, Kavanagh seeks an administrative expense in this case for attorneys' fees incurred in both opposing the Motion to Modify Sale Order filed by Goodwill Enterprises, Inc. d/b/a Auto Mall Collections ("Goodwill") and defending an action commenced by Goodwill in the Land Court, Department of the Massachusetts Trial Court, because those fees were incurred as a result of the Trustee's breach of warranty to her as a purchaser of estate assets. The Chapter 7 Trustee filed an Opposition to Kavanagh's Request for Payment because "the sale of the beneficial interest

1

was in fact free and clear of liens,"[1] and because "in any event the claim asserted by the Buyer [Kavanagh] is not a claim for actual, necessary costs or expenses in preserving the estate."

On February 3, 2016, the Court held a hearing on the Request for Payment and the Trustee's Opposition.  On February 9, 2016, the Court issued an order requiring the parties to file post-hearing memoranda of law on certain legal issues including, but not limited to, the following: 1) whether Kavanagh has a breach of warranty claim under the Order Authorizing and Approving Private Sale of Interest in 218 Andover Street Peabody LLC and Interest in 218 Andover Street Peabody Realty Trust, the "Membership/Beneficial Interest Purchase Agreement," the "Assignment of Membership Interest," or the "Assignment of Beneficial Interest;" 2) whether the principles set forth in <u>Reading Co. v. Brown</u>, 391 U.S. 471 (1968), apply in this Chapter 7 case; 3) whether the present contingent nature of any administrative expense Kavanagh may have, which is dependent on a judgment against Kavanagh in pending Land Court litigation commenced by Goodwill affects its allowance as "*actual*, necessary costs and expenses of preserving the estate" under 11 U.S.C. § 503(b)(emphasis supplied); 4) whether Kavanagh is entitled to an administrative expense, either directly or through principles of indemnification, against the estate for either damages or attorneys' fees in the event the Land Court determines that the purchase of the estate's beneficial interest

---

[1]  The Sale Order provided that "[u]pon completion of the sale, the Property will be free and clear of all liens, claims, encumbrances and interests, with any liens, claims, encumbrances or interests, to the extent valid, shall attach to the proceeds of the sale according to priorities established under applicable law."

in the Realty Trust triggered Goodwill's right of first refusal;  5) whether the principles

set forth in <u>Brandt v. Lazard Freres & Co., LLC. (In re Healthco Int'l, Inc.)</u>, 310 F.3d 9 (1st

Cir. 2002), apply to attorneys' fees incurred by Kavanagh in defending Goodwill's claims;

and 6) whether the potential loss by Kavanagh is sufficient to confer administrative

expense status.

The parties complied with the Court's order and filed briefs on April 6, 2016.  As

the facts are not in dispute and neither party requested an evidentiary hearing, the Court

makes the following findings of fact and conclusions of law.

## II. FACTS

The Debtor filed a Chapter 7 petition on April 22, 2011. On July 20, 2012, the

Chapter 7 Trustee filed a Motion for Order Authorizing and Approving Private Sale of

Interest in 218 Andover Street Peabody LLC (the "LLC") and Interest in 218 Andover

Street Peabody Realty Trust (the "Realty Trust") to Miriam Garland.  Pursuant to his

Motion, the Trustee sought authority to sell, "pursuant to 11 U.S.C. § 363, Fed. R. Bankr.

P. 2002(a)(2) and 6004, and MLBR Rule 2002-5 and 6004-1, all of the Trustee's right, title

and interest in (a) 218 Andover Street Peabody LLC . . . and (b) 218 Andover Street

Peabody Realty Trust . . . (collectively, the "Property"), free and clear of all liens, claims,

encumbrances and other interests, with all liens, claims, encumbrances and other

interests to the extent valid attaching to the sale proceeds."[2]   In his Sale Motion, the

---

[2] In the Trustee's Motion for Order Authorizing and Approving Private Sale of Interest
in 218 Andover Street Peabody LLC and Interest in 218 Andover Street Peabody Realty
Trust, the Trustee represented that he had determined that title to the real estate was held
by the Realty Trust, that the schedule of beneficiaries for the Realty Trust recited that its

Chapter 7 Trustee stated that he did not believe there were any such perfected, enforceable, valid liens, claims, interests, or encumbrances on the Property (defined as the bankruptcy estate's interests in the LLC and the Realty Trust), other than a mortgage in favor of North Shore Bank.  The original offeror, Miriam Garland, William F. Garland's spouse, offered $185,000 in cash for the Debtor's membership interest in the LLC and beneficial interest in the Trust.

Following a sealed bid auction, the Court determined that the April Realty Trust was the successful bidder for the estate's beneficial interest in the Realty Trust (the "Beneficial Interest"), which holds title to real estate located at 218 Andover Street, Peabody, Massachusetts, as well as the estate's membership interest in LLC, for a total purchase price of $250,250.[3]  On August 31, 2012, this Court entered an Order Authorizing

---

sole beneficiary was the LLC, that the Debtor and William F. Garland were the sole members of the LLC, and that on September 22, 2009, a certificate of cancellation of the LLC had been filed. The Trustee noted that the Debtor listed a 50% beneficial interest in commercial property located at 218 Andover Street, Peabody, Massachusetts on Schedule A-Real Property.  In this regard, Kavanagh did not challenge the validity of the Realty Trust or the status of title to the real property located at 218 Andover Street, Peabody, Massachusetts in the name of William F. Garland, as Trustee of the Realty Trust.

[3] Kavanagh, as Trustee of the April Realty Trust, and Brian D. Kelly ("Kelly") filed a joint affidavit in conjunction with the offer of the April Realty Trust in which they disclosed that they had never spoken to William F. Garland, whom they described as the co-owner of the the real property located at 218 Andover Street, Peabody, Massachusetts; that they never had a side deal with him to purchase the real property, while noting that he had rejected a previous offer to purchase the real property made by "one of our affiliated trusts" through an attorney in November of 2011; and that the April Realty Trust submitted its offer to purchase "the Debtor's interest in the Real Property" [sic] in good faith and without any consultation with Mr. Garland.  They added:  "We believe that the purchase price for the Debtor's interest in the Real Property [sic] as established by the sealed bid is certainly fair value for that asset."  It

and Approving the Private Sale of the Property to Kavanagh "in accordance with the terms contained in the Motion and the Membership/Beneficial Interest Purchase Agreement."

In conjunction with the purchase, the Chapter 7 Trustee of the estate of Daniel P. Corbett (the "Debtor") and Kavanagh executed a "Membership/Beneficial Interest Purchase Agreement," an "Assignment of Membership Interest," and an "Assignment of Beneficial Interest." The Membership/Beneficial Interest Purchase Agreement contained the following representations and warranties by the Trustee as Seller:

> (a) Seller will, upon the approval of this sale by the United States Bankruptcy Court for the District of Massachusetts have full, lawful power and authority to enter into and to carry out the terms of this Agreement.
> (b) Other than the approval of the United States Bankruptcy Court for the District of Massachusetts, no consent, approval or authorization of, or designation, declaration or filing, with any governmental authority is required in connection with the execution or delivery of the Agreement by Seller or the consummation by Seller of the transaction contemplated hereby.

The Assignment of Membership Interest provides: "The Assignor [the Trustee] warrants and represents to the Assignee that the Estate owns the Assigned Interest free and clear of any liens, claims or other encumbrances and that Assignor has full right and authority to transfer the Assigned Interest to the Assignee." The Assignment of Beneficial Interest provides:

> Except as set forth in the next sentence, the Assignor [the Trustee] warrants and represents to Assignee [Kavanagh] that the Estate owns the Assigned Interest free and clear of any liens, claims or other encumbrances and that

---

would appear that at the time they executed their affidavit Kavanagh and Kelly believed the Debtor owned a 50% interest in the real property, not a 50% Beneficial Interest in the Realty Trust.

the [Trustee] has the full right and authority to transfer the Assigned Interest to the Assignee [Kavanagh]. *The foregoing warranties and representations shall apply to attachments and other liens placed against the interest of Corbett in the Realty Trust or the Property but shall not apply to other encumbrances or matters affecting the title of the Property.*

(Emphasis supplied).

Approximately three years after the entry of the Sale Order, on August 31, 2015, Goodwill, an entity that did not hold a claim against the Debtor and did not receive notice of the Trustee's Motion for Order Authorizing and Approving Private Sale, filed a Motion to Modify Sale Order. On October 26, 2015, this Court issued a Memorandum and Order with respect to the Motion to Modify addressing Goodwill's assertion that the sale to Kavanagh is subject to its right of first refusal which is set forth in its unrecorded Lease with the Realty Trust. The Court issued the following order:

[T]he Court allows in part and denies in part the Motion to Modify Sale Order filed by Goodwill Enterprises, Inc., d/b/a Auto Mall Collections. The Court clarifies that it made no determination that the Chapter 7 Trustee's sale of the bankruptcy estate's interests in the 218 Andover Street Peabody Realty Trust and the 218 Andover Street Peabody LLC triggered the right of first refusal contained [in] a lease between the 218 Andover Street Peabody Realty Trust and Goodwill Enterprises, Inc., as the successor in interest to the original lessee. The Court abstains from all other issues raised by Goodwill in its Motion to Modify Sale Order.

The effect of the Court's order was that Goodwill, as the holder of a right of first refusal, could pursue its rights and remedies in the Land Court in its action against William F. Garland, individually and as Trustee of the 218 Andover Street Peabody Realty Trust, and Cathleen Kavanagh, Trustee of the April Realty Trust. Approximately two months after the entry of the abstention order, on January 5, 2016, Kavanagh, as noted above, filed the Request for Payment of Administrative Expense Claim, seeking an administrative

6

expense priority claim against the Debtor's estate pursuant to 11 U.S.C. § 503(b) and § 507(a)(1)(C) and (a)(2) in an amount to be determined after resolution of the Land Court action.

## III. POSITIONS OF THE PARTIES

Kavanagh argues that the April Realty Trust is entitled to an administrative expense for fees incurred in defending its title to the Beneficial Interest in the Realty Trust, including opposing Goodwill's Motion to Modify and responding to Goodwill's complaint in the Land Court.  With respect to the specific issues identified by the Court the parties argue as follows.

A. <u>Breach of Warranty Claim</u>

1. Kavanagh

Kavanagh contends that because the Assignment of Beneficial Interest was attached to the Trustee's Motion for Order Authorizing and Approving Private Sale, this Court approved the the form of assignment, including the Chapter 7 Trustee's representations and warranties which provided that the estate owned the Beneficial Interest "free and clear of any liens, claims  or other encumbrances."  Kavanagh observes that "[a]lthough a right of first refusal may typically affect title to real property, here it will affect title to a personal property interest acquired by April Realty Trust in the event that the Land Court rules that the Trustee's sale of the 50% Beneficial Interest triggered the right of first refusal."  In Kavanagh's view, if this were to happen, the Trustee would have breached his warranty and representation that the bankruptcy estate owned the Debtor's Beneficial Interest free and clear of Goodwill's right of first refusal.  Kavanagh

maintains that the April Realty Trust suffered damages of approximately $75,000 in

defending title to the Beneficial Interest against Goodwill's claim of a right of first refusal

in this Court and will incur additional fees and costs in defending Goodwill's Land Court

action.

2. The Trustee

The Trustee contends that none of the documents prepared in conjunction with

the sale of the Beneficial Interest, including the Sale Order, the Membership/Beneficial

Interest Purchase Agreement, the Assignment of Membership Interest, and the

Assignment of Beneficial Interest can be the basis for a breach of warranty claim by

Kavanagh.  He states that the only document that could conceivably contain a warranty

that could form the basis of Kavanagh's claim is set forth in the Assignment of Beneficial

Interest.  The Trustee contends, however, that there was no breach of that warranty

because the language employed in the Assignment of Beneficial Interest simply does not

support a claim.  The Trustee adds:

> The first sentence of the warranty warrants that the Assigned Interest is
> owned free and clear and could be transferred. That warranty is true
> irrespective of Goodwill's claims, as Goodwill's claims are not against the
> interest of Corbett in the Realty Trust (the interest that passed to the
> bankruptcy estate and was sold to Kavanagh) but rather are against the
> Property itself. The bankruptcy estate, through Corbett, never had a fee
> interest in the Property; the entire fee interest in the Property was (and to
> the best of the Trustee's knowledge still is) held by W. Garland as trustee of
> the Realty Trust. Goodwill never sought to reach and apply Corbett's
> interest in the Realty Trust to get a claim against that beneficial interest.
> Goodwill's claim arises under its lease of the Property, a lease to which
> Corbett was not even a party, and Goodwill bases its claim on the contract
> rights in the Property such lease grants to it. While in Goodwill's view the
> sale of Corbett's interest in the Realty Trust triggered rights of Goodwill in
> the Property, that does not mean Goodwill's lease and its rights under it

8

> constituted a lien, claim, or encumbrance against Corbett's interest. After
> all, Goodwill has no claim that it could maintain as a creditor in this
> bankruptcy case, and if its lease truly were a lease encumbering Corbett's
> interest in the Realty Trust then that unexpired lease would have been
> deemed rejected pursuant to 11 U.S.C. § 365(d)(4) long before the Trustee's
> sale of Corbett's interest in the Realty Trust to Kavanagh.

(footnote omitted).  The Trustee also emphasizes that the scope of the warranty was to

attachments and other liens against the Beneficial Interest of the Debtor in the Realty

Trust or the Property and did not "apply to encumbrances and other matters affecting

title to the Property."

    B. <u>Reading Co. v. Brown</u>

        1. Kavanagh

Kavanagh argues that the principles set forth in <u>Reading v. Brown</u>, 391 U.S. 471

(1968), apply in this Chapter 7 case.  In addition to <u>Reading</u>, Kavanagh also specifically

relies upon <u>Brandt v. Lazard Freres & Co. LLC (In re Healthco Int'l, Inc.)</u>, 310 F.3d 9 (1st

Cir. 2002), in which the First Circuit extended the holding of <u>Reading</u> to court-awarded

costs arising out of the defense of a postpetition lawsuit by parties whom the Chapter 7

trustee had unsuccessfully sued owing to their involvement in a pre-bankruptcy

leveraged buyout which the trustee sought to avoid as a fraudulent transfer.  Kavanagh

also relies upon <u>In re G.I.C. Gov't Secs., Inc.</u>, 121 B.R. 647 (Bankr. M.D. Fla. 1990), cited in

<u>In re Healthco Int'l, Inc.</u>, where the court, based upon <u>Reading</u>, held that "parties

subjected to loss and expense as a result of the administration of a bankruptcy estate are

entitled to be made whole as a matter of fundamental fairness and should be allowed an

administrative claim to implement that result." In re G.I.C. Gov't Secs., 121 B.R. at 649.[4]

Kavanagh contends that because the April Realty Trust paid the estate over $250,000 in

good faith for the Assignment of Beneficial Interest fundamental fairness requires that it

be entitled to an administrative claim to recover any losses as a result of the Trustee's

breach of representations and warranties.

2. The Trustee

The Trustee contends that the principles set forth in Reading do not apply in

Chapter 7 cases, or at least not in the present Chapter 7 case where the Trustee has not

been authorized to operate a business of a debtor pursuant to 11 U.S.C. § 721 and where

he is merely selling assets as part of his liquidation of property of the estate.  He argues

that Reading's exception to the general rule of 11 U.S.C. § 503(b)(1)(A), recognized by the

United States Court of Appeals for the First Circuit in Woburn Assocs. v. Kahn (In re

Hemingway Transport, Inc.), 954 F.2d 1 (1st Cir. 1992), only extends to injuries resulting

from the operation of a debtor-in-possession's business even if the expenses did not arise

from transactions necessary to preserve or rehabilitate the estate.  Citing Kipperman v.

Internal Rev. Serv. (In re 800ideas.com, Inc.) 496 B.R. 165 (B.A.P. 9th Cir. 2013), he further

contends that "the holding in Reading is a narrow one," 496 B.R. at 177.  Noting that the

court in In re 800Ideas.com, Inc. observed that there were two lines of decisions that have

applied Reading, one involving "postpetition tort-like conduct" and the other involving

---

[4] In In re G.I.C. Gov't Secs., Inc., the bankruptcy court gave priority to court costs
arising out of a post-petition lawsuit brought by a trustee, a circumstance that does not
exist in the instant case.

violations of 28 U.S.C. § 959(b)[5] by a trustee or debtor-in-possession while operating a business, 496 B.R. at 177-78, the Trustee concludes that even if the Court were to determine that he breached a warranty to Kavanagh (which he denies), he did not engage in tortious or wrongful conduct so as to create an administrative expense.

C. The Contingent Nature of the Claim

1. Kavanagh

Kavanagh asserts that the April Realty Trust has incurred damages in the form of legal fees as a result of the Trustee's alleged breach of warranty and that it is likely to incur additional damages in the event the Land Court issues an adverse ruling on the right of first refusal in Goodwill's action pending there.  Kavanagh cites In re Caldor, Inc.-NY, 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999), aff'd, 266 B.R. 575 (S.D.N.Y. 2001)("neither the Bankruptcy Code nor caselaw construing it prohibits contingent administrative claims"), emphasizing that whenever an entity provides goods or services to a trustee or debtor-in-possession it has a contingent administrative claim.[6]  Although Kavanagh recognizes that

---

[5] Section 959(b) provides:

> (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

[6] In Caldor, Inc.-N.Y., an overseas manufacturer entered into agreement with Chapter 11 debtors-in-possession to produce merchandise to debtors' specifications.  It moved

a postpetition claim that is still contingent cannot be allowed and paid as an administrative expense, Kavanagh maintains that once the claim is allowed, the holder would be entitled to priority treatment. Kavanagh asserts that fundamental fairness dictates that the April Realty Trust should not be prejudiced by the contingent nature of a portion of its claim and the timing of its assertion, adding that the bankruptcy case should remain open and consideration of the administrative expense claim deferred until the Land Court action is resolved.

### 2. The Trustee

The Trustee asserts that an allowed administrative expense claim must be "actual" and that because Goodwill has not prevailed on its claim that the right of first refusal has been triggered, Kavanagh's claim for breach of warranty is contingent, not actual. Relying upon <u>In re Rock & Republic Enters.</u>, No. 10-11728, 2011 WL 4756571 (Bankr. S.D.N.Y. Oct. 7, 2011), in which the court considered a request for administrative expenses that was contingent, the Trustee emphasizes that "[a]lthough a claim may be contingent, only 'actual' administrative expenses, not contingent expenses, are entitled to priority under § 503." <u>Id.</u> at *5.[7]

---

for determination that, upon debtors' cancellation of this agreement, it was entitled to recover, in full, for contract damages that it incurred as administrative expense. The bankruptcy court entered order granting motion in part and denying it in part. On appeal, the district court affirmed.

[7] The court in <u>Rock and Republic Enters.</u> distinguished <u>In re Caldor, Inc.-N.Y.</u>, stating:

Quetico [the entity asserting entitlement to an administrative expense] cites <u>In re Caldor, Inc. N.Y.</u>, 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999) for the proposition that "neither the Bankruptcy Code nor case law construing it

D. <u>Indemnification</u>

1. Kavanagh

Kavanagh, citing MCLE, Damages, Interest and Attorney's Fees in Massachusetts

Litigation, Third Party Damages, § 12.3.2 (4th ed. 2015), and <u>Fall River Housing Auth. v.</u>

<u>H.V. Collins Co.</u>, 414 Mass. 10 (1992), asserts that a right of indemnity may be implied in

circumstances where "there are unique special factors demonstrating that the parties

intended that the putative indemnitor bear the ultimate liability or when there is a

generally recognized special relationship between the parties."  Kavanagh contends that

a special relationship between a buyer and seller exists where the buyer obtains a

warranty from the seller regarding the asset purchased, referencing the Trustee's alleged

warranty that the bankruptcy estate owned the Beneficial Interest in the Realty Trust free

and clear of any liens, claims and other encumbrances and had the authority to transfer

the interest free and clear of any liens, claims and encumbrances.   In other words,

Kavanagh asserts that by being forced to defend its title against the very promise the

---

prohibits contingent administrative claims . . . to the contrary, whenever an
entity provides goods or services to a trustee or debtor-in-possession, it has
a contingent administrative claim." This statement is made in the context of
the definition of a claim, which neither party disputes may be contingent.
11 U.S.C. § 101(5). That court's finding that a claim may be contingent does
not impact the requirement that at the time the court considers the
administrative expense claim, the contingency at issue had to have
occurred. Rather, the court qualifies its earlier statement that a claim may
be contingent by stating that "a post-petition claim that is still contingent
will not be allowed under § 503(b) of the Bankruptcy Code and paid as an
administrative expense." <u>In re Caldor, Inc. N.Y.</u>, 240 B.R. at 191. Thus, <u>In re</u>
<u>Caldor, Inc. N.Y.</u> actually contradicts Quetico's argument.

<u>Id.</u>

Chapter 7 Trustee warranted, it has a reasonable expectation of indemnification for any loss or expense arising from Goodwill's challenge to its title to the beneficial interest.

### 2. The Trustee

The Trustee prefaces his argument by observing that while Kavanagh may suffer a loss as a result of defending against Goodwill's claims regarding its asserted right of first refusal, the April Realty Trust does not have any claim against the bankruptcy estate. He argues that "[a] bankruptcy trustee does not guarantee to a buyer that an asset sale will not have further repercussions inherent in the nature of the assets (such as the fact that the Realty Trust owned the Property subject to a lease with a right of first refusal), nor does a bankruptcy trustee guarantee that an asset sale will be successful for the buyer and will not lead to an actual or potential loss." Emphasizing that he did not engage in any wrongful or tortious conduct vis à vis Kavanagh, the Trustee argues that he could not have "a common law indemnification obligation as a primary wrongdoer relative to Kavanagh's secondary or vicarious liability." He adds that he did not contractually agree to an indemnification of Kavanagh in the event title was challenged or otherwise. He concludes that the only basis for an indemnification claim would be in the event of a breach of warranty contained in the Assignment of Beneficial Interest and there was no such breach, adding that even if there were a breach Kavanagh would not be entitled to administrative claim because such an expenses would be neither reasonable and necessary nor beneficial to the bankruptcy estate.

E. In re Healthco Int'l, Inc.

1. Kavanagh

In addition to the arguments summarized above, Kavanagh relies on the ruling of the United States Court of Appeals for the First Circuit in In re Healthco Int'l, Inc., 310 F.3d 9 (1st Cir. 2002), in support of her argument that because the court permitted the payment of costs under 28 U.S.C § 1920 as allowable under 11 U.S.C. § 507(a)(1) [now (a)(2) as a result of the Bankruptcy Abuse and Consumer Protection Act of 2005], this Court should permit payment of the April Realty Trust attorneys' fees as an administrative expense. While noting that the types of losses incurred by April Realty Trust are not within the ambit of § 1920, Kavanagh argues that the First Circuit in Healthco approved the overriding the policy of bankruptcy law to make "'parties subjected to loss and expense as a result of the administration of a bankruptcy estate" whole "as a matter of fundamental fairness" through allowance of an administrative expense. Healthco, 310 F.3d at 13 (quoting In re G.I.C. Gov't Secs., 121 B.R. at 649).

2. The Trustee

The Trustee distinguishes Healthco and asserts that the First Circuit Court of Appeals in that case did not grant an administrative expense priority to attorneys' fees, only to the bill of costs taxed directly against a trustee after he lost a lawsuit that he had brought, and only because such costs are expressly set forth in the priority statute.[8]  In

---

[8] Section 507(a)(2), provides that the highest priority is afforded to "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."  See Healthco, 301 F.3d at 11 n.3.

15

Healthco, a trustee had brought a lawsuit against several defendants involved in the pre-bankruptcy leveraged buyout of Healthco, alleging that the buyout was a fraudulent transaction. Several defendants settled with the Trustee, but certain defendants including Lazard Freres, Gemini Partners, and Hicks, Muse & Co. did not. After a lengthy jury trial, the defendants prevailed in the district court, and sought to have the costs of litigation, exclusive of attorneys' fees, paid by the bankruptcy estate. Pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, the district court awarded them costs for expenses such as court filing fees, transcription and witness fees, and copying charges. 310 F.3d at 10. The issue before the First Circuit was whether such costs were entitled to administrative priority, not whether attorneys' fees were entitled to such priority.

F. Sufficiency of Kavanagh's Potential Loss to Confer Administrative Expense

1. Kavanagh

Kavanagh essentially reiterates arguments previously made, citing the concept of fundamental fairness, relying upon Reading, and arguing that April Realty Trust will incur substantial harm in addition to the $75,000 in attorneys' fees incurred to date. Kavanagh also asserts that the April Realty Trust "will potentially lose the appreciation of its investment in the Beneficial Interest which is substantial given the uptick in the real estate market since 2012 and the paydown [sic] of the first mortgage during this three and half year period."

2. The Trustee

Like Kavanagh, the Trustee reiterates his previous arguments but adds the following, admittedly academic, proposal as to a remedy for Kavanagh:

16

But if this Court were (a) to find that if the Land Court determines that the purchase of the estate's interest in the Realty Trust triggered Goodwill's right of first refusal then the Trustee breached his warranty (which, the Trustee repeats, is not the case under the facts here), and (b) to conclude that even though it is contingent there must be a remedy for Kavanagh, then the Trustee suggests the following remedy. Kavanagh can be given the option of reopening the sale of the beneficial interest in the Realty Trust, with Goodwill having a right of first refusal in the reopened sale and with any increase in the purchase price available to compensate Kavanagh for her provable damages or loss. That would give Kavanagh a choice. She could choose to continue to oppose in the Land Court the claim of Goodwill to a right of first refusal (a claim that, as noted above, both the Trustee and Kavanagh believe is unfounded), in which case she would have no claim in the bankruptcy case and the Trustee could proceed with final report and distribution. Or she could choose to have the sale reopened, putting to rest any claim by Goodwill of a right of first refusal since the reopened sale would honor such a right and ensuring that at the end of the day a buyer would have good title.

## III. DISCUSSION

A. <u>Applicable Law</u>

Section 507(a)(2) accords administrative expenses of a bankruptcy estate second priority.[9] "The availability of the priority [for administrative expenses, as provided in §

---

[9] Section 507(a) provides in pertinent part:

(a) The following expenses and claims have priority in the following order:

(1) First: . . .

(C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

507(a)(2)] encourages third parties to deal with a business that has filed in bankruptcy, because these parties will be paid ahead of other creditors." In re Marshall, No. 2:14-bk-16539-D, 2015 WL 5735220, at *3 (Bankr. C.D. Ca. Sept. 29, 2015)(quoting Abercrombie v. Hayden Corp. (In re Abercrombie), 139 F.3d 755, 757 (9th Cir. 1998)).  Section 503(b)(1)(A) provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate including . . ." and then lists specific categories.  According to the court in Kipperman v. Internal Revenue Serv. (In re 800Ideas.com, Inc.), 496 B.R. 165 (B.A.P. 9th Cir. 2013), "[u]nder § 102(3) "includes" and "including" are not limiting. Therefore, the use of "including" in the preamble of § 503(b)(1)(A) means that actual and necessary costs and expenses of preserving the estate may include types of claims other than those listed under § 503(b)(1)(A) which may be given administrative priority."  Id. at 175.  What constitutes an "actual, necessary costs and expenses of preserving the estate" are construed narrowly in order to keep administrative expense claims to a minimum.  In re Marshall, 2015 WL 5735220, at *3 (citing Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995)).  Stated another way "[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will

---

(2) Second, administrative expenses allowed under section 503(b) of this title, unsecured claims of any Federal reserve bank related to loans made through programs or facilities authorized under section 13(3) of the Federal Reserve Act (12 U.S.C. 343), and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a)(1), and (2).  Section 503(b) provides that "(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-- (1)(A) the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b).

18

be equally distributed among his creditors, statutory priorities are narrowly construed."

Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 100 (2d Cir. 1986) (citations

omitted). The entity asserting entitlement to priority payment as an administrative

expense bears the burden of satisfying requirements for such status. *See* In re Rock &

Republic Enters., No. 10-11728, 2011 WL 4756571, at *4 (Bankr. S.D.N.Y. 2011). *See also*

Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 5 (1st Cir. 1992)).

    B. Breach of Warranty

    Kavanagh's claim to an administrative expense priority hinges on the assertion

that the Trustee breached a warranty that her purchase of the Debtor's Beneficial Interest

in the Realty Trust was encumbered by the right of first refusal granted by the Realty

Trust in its lease with Goodwill. Thus, the first issue that the Court must determine is

whether the Trustee breached any warranty regarding the unrecorded right of first

refusal contained in the lease between the Realty Trust and Goodwill. Because the right

of first refusal was unrecorded, it did not constitute a covenant running with the land, *see*

In re Fleishman, 138 B.R. 641, 643 (Bankr. D. Mass. 1992)(citing, inter alia, Snow v. Van

Dam, 291 Mass. 477, 480, 197 N.E. 224 (1935)), and, thus, is a personal contract right

between the Realty Trust and Goodwill. Id. at 646. Because the right of first refusal was

contained in the lease of the real property located at 218 Andover Street, Peabody,

Massachusetts between the Realty Trust and Goodwill, because the Trustee was not

selling (and could not sell because the Debtor did not own) the real estate leased to

Goodwill, because any right of first refusal contained in the lease could not be an

encumbrance on the Debtor's Beneficial Interest in the Realty Trust, and because the

Trustee carved out from his warranties and representations regarding "attachments and other liens placed against the interest" of the Debtor, "other encumbrances or matters affecting title to the Property," the Court concludes that Kavanagh is not entitled to an administrative expense priority due to any breach of warranty by the Trustee.   As Kavanagh recognized in the Opposition to Modify Sale Order,

> [T]he Realty Trust did not receive an offer to purchase the Property; rather, the Bankruptcy Trustee sold the Debtor's personal property interests in the Realty Trust and Realty LLC, which consisted of a 50% interest in each entity. This conclusion is consistent with established precedent of this Court. In In re Varrichione, 354 B.R. 563 (Bankr. D. Mass. 2006) this Court held that, where a debtor holds less than a controlling interest in a nominee trust, as is the case here, a sale of the Debtor's interest in the trust is a personal property interest and is not the equivalent of a sale of the trust res.

The Court observes that absent a merger of legal and equitable title to the Trust property, the Debtor as the holder of only a Beneficial Interest in the Realty Trust would not be authorized to act on behalf of the Realty Trust and could not execute a deed conveying the real property.  The Trustee, however, while assigning the estate's "entire right, title and interest in any and all beneficial interest in the Realty Trust and in the Property, as well as the estate' equity  and economic rights in the Realty Trust and in the Property, and all other rights the estate had in the Realty Trust and in the Property," expressly excepted from his warranties and representations "other encumbrances or matters affecting title to the Property," which in the Assignment of Beneficial Interest was defined as the real estate located at 218 Andover Street, Peabody, Massachusetts.  Under

these circumstances, any alleged breach of warranty claim is far too tenuous to serve as grounds for allowance of an administrative priority expense.[10]

In this regard, the Court also concludes that the right of first refusal contained in Goodwill's lease is not an "interest" in either the Membership Interest or the Beneficial Interest sold by the Trustee to Kavanagh as it is not a claim flowing from the Property sold by the Trustee. Section 363(f) and the Sale Order provided for the sale of the estate's interests in the Property "free and clear of all liens, claims, encumbrances and interests, with any lines, claims, encumbrances or interests, to the extent valid to attach to the proceeds of the sale. . . ." *See* 11 U.S.C. § 363(f).[11]  In <u>Mass. Dep't. of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)</u>, 484 B.R. 860 (B.A.P. 1st Cir. 2013), the

---

[10] The Court is unaware of the extent of Kavanagh's due diligence with respect to the April Realty Trust's offer to purchase the Debtor's Beneficial Interest in the Realty Trust. It is hard to imagine that Kavanagh failed to request production of any lease of the real property standing in the name of the Realty Trust.  This is particularly significant in view of the prior offer to purchase the real property by Kavanagh and Kelly through an affiliated trust from William Garland.

[11] Section 363(f) provides:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

    (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (2) such entity consents;
    (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4) such interest is in bona fide dispute; or
    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

bankruptcy appellate panel analyzed the meaning of the phrase "any interest" under §

363(f), noting  a divergence of views with some courts construing the term narrowly and

others expansively.  484 B.R. at 867-68 (citations omitted).  The panel concluded that "the

more expansive reading of the term 'any interest' advanced by the Seventh, Fourth,

Third, and Second Circuits . . . is more consistent with the language of the Bankruptcy

Code and the policy expressed in § 363." Id. at 869 (citing Ind. State Police Pension Trust

v. Chrysler LLC (In re Chrysler LLC), 576 F.3d 108, 126 (2d Cir. 2009), *cert. granted and*

*judgment vacated on other grounds*, 558 U.S. 1087 (2009); Precision Indus., Inc. v. Qualitech

Steel SBQ, LLC, 327 F.3d 537, 545 (7th Cir. 2003); U.S. v. Knox-Schillinger (In re Trans

World Airlines, Inc.), 322 F.3d 283, 288–89 (3d Cir. 2003); and United Mine Workers of

Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.), 99

F.3d 573 (4th Cir. 1996)).  Nevertheless, were the right of first refusal to be considered to

affect the Beneficial Interest in the Realty Trust, or be considered to be an "interest" in

that Beneficial Interest, the sale was free and clear of any interests.  *See* 11 U.S.C. § 363(f),

and *supra* note 1.

     C. Reading Co. v. Brown

     Kavanagh's assertion of a breach of warranty claim against the Trustee is

contractual in nature as it arises out of the Membership/Beneficial Interest Purchase

Agreement.  Kavanagh at no time asserted that the Trustee engaged in fraudulent or

negligent conduct that would give rise to a tort claim.  Nevertheless, Kavanagh relies

upon Reading Co. v. Brown, 391 U.S. 471 (1968), and its progeny to argue that

"fundamental fairness" requires that the April Realty Trust be afforded an administrative

expense priority.  Kavanagh's position lacks merit as the Trustee did not, and was never

authorized to, operate any business owned by the Debtor. *See* 11 U.S.C. § 721.

In In re 800Ideas.com., Inc., 496 B.R. 165 (B.A.P. 9th Cir. 2013), the bankruptcy

appellate panel noted that two requirements generally are required for an administrative

expense to be deemed "actual and necessary" under § 503(b)(1)(A):  The claim must arise

from a transaction with the debtor in possession and must substantially benefit the estate.

Id. at 175.  *See also* Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib.

Corp.), 330 F.3d 36, 42 (1st Cir. 2003)("In general, for a claim to qualify as an

administrative expense under subsection 503(b)(1), (1) it must have arisen from a

transaction with the trustee or debtor in possession, rather than from a prepetition

transaction with the debtor, and (2) the consideration supporting the claim must have

benefitted the estate in some demonstrable way."); Cramer v. Mammoth Mart, Inc. (In re

Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976)(same).  *See also* In re Hemingway

Transp., Inc., 954 F.2d at 5.  Alternatively, the exception carved out by the Supreme Court

in Reading Co. v. Brown, 391 U.S. 471 (1968), must apply.  496 B.R. at 176.

In Reading, the Supreme Court held that that "fairness to all persons having claims

against an insolvent" permitted administrative expense priority for tort claims arising

postpetition. 391 U.S. at 477.  The court in In re 800Ideas.com, Inc., observed:

> The Supreme Court [in Reading] essentially engaged in a two-step analysis
> to reach its conclusion. The Court first addressed whether the trustee
> breached some legal duty that gave rise to a corresponding right to
> payment under state law. Because Reading suffered the financial injury
> from the negligence of the trustee and a workman, the Court noted that
> Reading would have a right to recover under the common law rule of
> respondeat superior. Therefore, in principle, the Court found that Reading

had a "right to recover for that injury from their 'employer,' the business under arrangement." Id. at 477, 88 S.Ct. 1759. Liability was thus established.

\*\*\*

Next, the Court addressed the priority issue. The Court first considered the statutory objective of "fairness to all persons having claims against an insolvent." The Court then balanced the objective of the debtor's rehabilitation against the desirability of allowing those injured by the operation of the business during the bankruptcy process to recover ahead of those for whose benefit the business was carried out.

496 B.R. at 177-78.

In the First Circuit, the court, in In re GT Advanced Techs., Inc., 547 B.R. 3 (Bankr.

D. N.H. 2016), stated:

The First Circuit, relying on the underlying reasoning in Reading, has extended its rationale beyond the tort context and has held that other types of postpetition injuries and expenses are entitled to administrative priority, despite no benefit having been conferred upon the debtor's estate, *when those injuries are caused or expenses incurred by the postpetition operation of the debtor's estate.* For example, the court has held administrative priority status should be granted to civil compensatory fines for postpetition injunction violations, Charlesbank, 755 F.2d 200, and for fines and penalties incurred for postpetition failures to comply with environmental regulations, Munce's, 736 F.3d 567; Cumberland Farms, Inc. v. Fla. Dept. of Envtl. Prot., 116 F.3d 16 (1st Cir. 1997). In those cases, however, the court took care to emphasize that the administrative priority attached only on account of postpetition actions or failures to act in accordance with the debtors' postpetition obligations, and not merely on the debtors' continuation of any prepetition conduct. *See, e.g.,* Munce's, 736 F.3d at 571; Cumberland, 116 F.3d at 20–21; Charlesbank, 755 F.2d at 201–02.

547 B.R. at 12-13 (emphasis supplied).  Nevertheless, as noted above, in In re Hemingway

Transport, Inc., 954 F.2d 1 (1st Cir. 1992), the United States Court of Appeals for the First

Circuit emphasized, as did the panel in In re 800Ideas.com, Inc., that "[t]he traditional

presumption favoring ratable distribution among all holders of unsecured claims

counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses.  Id. at 4-5.

This Court concludes, based upon review of the decisions cited by the parties, that Kavanagh's request for administrative expense priority does not qualify for the treatment Kavanagh seeks.  Kavanagh has not convincingly established that there was a breach of the Trustee's warranties, let alone the commission of a tort by the Trustee while operating a business.  Unlike the situation in Reading where Reading Co. was involuntarily forced into a relationship with the debtor, Kavanagh voluntarily bid for assets of the bankruptcy estate, presumably after an opportunity to perform due diligence.  As the Supreme Court observed in Reading: "the present petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law." 391 U.S. 477.   As noted above, the Trustee was not operating a business pursuant to 11 U.S.C. § 721 and was not subject to 28 U.S.C. § 959(b).  The Debtor merely owned a Beneficial Interest in the Realty Trust that the Trustee offered for sale pursuant to 11 U.S.C. § 704(a)(1).  The Trustee did not commence an action on behalf of the estate as was the case in In re Healthco Int'l, Inc., 310 B.R. 9 (1st Cir. 2003), and In re G.I.C. Gov't Secs., Inc., 121 B.R. 647 (Bankr. M.D. Fla. 1990), and the circumstances present in Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200 (1st Cir. 1985), where the debtor violated an injunction,[12] and in Cumberland Farms, Inc. v. Fla. Dep't of

_____

[12] The First Circuit stated: "We see no reason why the claim of plaintiffs in this case does not fall within both the letter and the spirit of Reading. The same fairness principle favors plaintiffs here, whose premises, lives, or businesses were adversely affected by Charlesbank's continuing conduct in violation of the temporary injunction. That the

Envtl. Protection, 116 F.3d 16 (1st Cir. 1997), where the debtor incurred a penalty for its

failure to comply with environmental protection laws, simply are not present here. As

the First Circuit stated In re Hemingway Transport, Inc.:

> Most decisions employing the Reading rationale have arisen in the context
> of reorganization proceedings. *See, e.g.*, In re Microfab, Inc., 105 B.R. 161,
> 168 n.20 (Bankr. D. Mass. 1989) (Reading–Charlesbank rationale
> inapplicable in liquidating chapter 7 case). *But cf.* In re Pierce Coal &
> Constr., Inc., 65 B.R. at 530 (Reading applicable where chapter 7 trustee
> operated business of debtor). Application of the Reading–Charlesbank
> rationale in the context of an ordinary, nonoperating liquidation
> proceeding appears extremely problematic, as one fundamental
> justification for the priority is that general creditors stand to benefit from
> the postpetition operation of the debtor's business, either through the
> immediate generation of operating profits or through the ultimate
> reorganization of the debtor as a viable business entity.

954 F.2d at 5, n.5.  Accordingly, Kavanagh has not shown entitlement to an administrative

expense priority under the principles of Reading and its progeny.

C. Contingency and Indemnification

According to the Untied States Court of Appeals for the First Circuit in Araujo v.

Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., 693 F.2d 1 (1st Cir. 1982),  there

are three circumstances which may give rise to a right of indemnification.

> First, an express agreement may create a right to indemnification. W.
> Prosser, *Law of Torts* § 51 (4th ed. 1971). Second, a contractual right to
> indemnification may be implied from the nature of the relationship
> between the parties. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350
> U.S. 124, 133-34, 76 S.Ct. 232, 237-38, 100 L.Ed. 133 (1956). Third, a tort-based
> right to indemnification may be found where there is a great disparity in
> the fault of the parties. Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir.
> 1978); W. Prosser, *Law of Torts* § 51.

wrong committed by Charlesbank was a violation of an injunction issued in the course
of proceedings aimed at enjoining and obtaining damages for the commission of a
nuisance does not take it out of the category of a "tort". Id. at 202.

<u>Araujo</u>, 693 F.2d at 2. Only the second circumstance is arguably present in the instant case.  The court in <u>Samos Imex Corp. v. Nextel Commc'ns, Inc.</u>, 20 F.Supp.2d 248 (D. Mass. 1998), elaborated upon implied indemnification, stating:

> Lacking an express indemnity provision, the court may recognize an implied right to indemnification if "special factors" exist to support an intention that one party indemnify the other. *See* <u>F</u>all River Housing Auth., 414 Mass. at 14, 604 N.E.2d 1310. The special factors result from the contract provisions as viewed against the relationship between the parties. *See* <u>Monadnock Display Fireworks, Inc. v. Andover</u>, 388 Mass. 153, 156, 445 N.E.2d 1053 (1983) (holding town liable under implied indemnification in contract for police protection for injury to spectator); <u>Araujo</u>, 693 F.2d at 2 (noting relationship between vendor and purchaser doesn't normally give rise to indemnification rights). Damages, however, must be fairly within the scope of forseeability to permit inclusion under an implied right of indemnification. *See* <u>Great Atlantic and Pacific Tea Co. v. Yanofsky</u>, 380 Mass. 326, 333, 403 N.E.2d 370 (1980). Indemnification is not appropriately implied when contract provisions expressly limit indemnification. *See* <u>Fall River Housing Auth.</u>, 414 Mass. at 15, 604 N.E.2d 1310. Moreover, only an express indemnification provision can cause indemnification of an indemnitee who is himself negligent. *See* <u>Kelly</u>, 31 Mass. App. Ct. at 629, 581 N.E.2d 1316.

<u>Samos Imex Corp.</u>, 20 F.Supp.2d at 251-52.  Although Kavanagh contends special factors are present here, the Court disagrees.

The court in <u>In re RNI Wind Down Corp.</u>, 369 B.R. 174 (Bankr. D. Del. 2007), in the context a plan administrator's objection to a claim by a former officer named as a defendant in a civil action brought by the Securities and Exchange Commission,  defined "indemnification" as follows:  It stated:

> "Indemnification is the right to be reimbursed for all out of pocket expenses and losses caused by the underlying claim." <u>Majkowski [v. Am. Imaging Mgmt. Servs., LLC]</u>, 913 A.2d [572] at 586 [2006]. "The right is typically subject to a requirement that the indemnitee [has] acted in good faith and

in a manner that he reasonably believed was in the best interest of the company." Id. "As a result, an indemnification dispute generally cannot be resolved until after the merits of the underlying controversy are decided because the good faith standard requires a factual inquiry into the events that gave rise to the lawsuit." Id.

369 B.R. at 185-86 (footnote omitted).   The decision highlights the problems with Kavanagh's position:   the April Realty Trust has not established entitlement to an administrative expense claim for breach of warranty, and to the extent one might exist it is contingent.

In view of the observations of the First Circuit and the authorities cited above, the Court concludes that, not only does Kavanagh not have a "claim," the April Realty Trust's claims for damages, which remain contingent, do not fall "fairly within the scope of foreseeability." Samos Imex Corp., 20 F.Supp.2d at 251.   To repeat, Kavanagh can and does rely solely upon an "implied right to contractual indemnity" for both legal fees incurred, as well as for any additional legal fees and potential damages should Goodwill prevail in the Land Court.   Those potential damages obviously are contingent upon Goodwill's success in the Land Court, which is by no means guaranteed.   Any assertion by Kavanagh of entitlement to an administrative expense priority of necessity must arise from a breach of warranty by the Trustee as the nature of the parties' relationship was that of buyer and seller, and there was no express indemnification provisions in any of the documents executed by the Trustee.

Kavanagh contends that the buyer and seller relationship is a special circumstance. This argument is unpersuasive and boarders on frivolous.   When viewed in a larger context, labeling buyer-seller relationships stemming from a trustee's sale of assets as

28

special circumstances would invite recriminations and be wholly unworkable in bankruptcy cases where trustees and debtors-in-possession routinely sell assets and implied indemnification is seldom, if ever, invoked.  Although Kavanagh asserts that the April Realty Trust has been forced to defend title against the very promise the Trustee warranted, the Court disagrees, particularly as the Trustee disclaimed any warranty relating to "other encumbrances or matters affecting the title to the Property."  This Court has concluded that no such warranty was included in the documents executed in conjunction the the Trustee's sale of the the Debtor's Beneficial Interest in the Realty Trust and that Kavanagh is not entitled to an administrative priority expense under the Supreme Court's decision in <u>Reading</u>.  Although Goodwill has named Kavanagh as a defendant in the Land Court action, the Trustee did not warrant that Kavanagh would never be sued or that its acquisition of the Beneficial Interest in the Realty Trust would prove to be a good investment.  As noted above, the unrecorded right of first refusal granted by William F. Garland, as Trustee of the Realty Trust, relates to the sale of the real property; the Land Court will determine whether it extends to the sale of the Debtor's 50% Beneficial Interest in the Realty Trust, as Goodwill contends.

D. <u>In re Healthco Int'l, Inc. and Kavanagh's Potential Loss</u>

Finally, the Court concludes that <u>Healthco</u> is completely distinguishable from the instant case as the Trustee has not taken any action against Kavanagh.  Moreover, the magnitude of its potential loss can not transform a claim that lacks merit into one that does.  The Court concludes that the Trustee's arguments relative to any issues relating to those topics are persuasive and incorporates them by reference.

29

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order denying Kavanagh's

Request for Payment of Administrative Expense Claim.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  May 3, 2016