# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DANIEL P. CORBETT**,                     Chapter 7
    Debtor                     Case No. 11-13667-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is "April Realty Trust's Motion to Re-Open Bidding for Debtor's Interest in 218 Andover Street Peabody Realty Trust, Assented to by Chapter 7 Trustee" (the "Motion to Re-Open Bidding"), which motion was filed by Cathleen E. Kavanagh, Trustee of April Realty Trust ("Kavanagh" or "April Realty").[1]  The filing of the Motion to Re-Open Bidding was precipitated by a decision issued by the Massachusetts Land Court, Department of the Massachusetts Trial Court, *see* Goodwill Enters., Inc. v. Garland, Misc. Case No. 15 MISC 000317 (RBF), 2017 WL 4801104 (Land Ct. Oct. 20, 2017), concerning the enforcement by Goodwill Enterprises, Inc. d/b/a/ Auto Mall Collections of its right of first refusal ("ROFR") to purchase property located at 218 Andover Street in Peabody, Massachusetts (the "Property"), whose record owner is the

---

[1] All pertinent facts and the record of proceedings are well known to the parties and will not be repeated in detail.  The Court assumes all parties are thoroughly familiar with the facts and procedural background.

218 Andover Street Peabody Realty Trust (the "Realty Trust").[2]  The Chapter 7 Trustee of

the estate of Daniel P. Corbett, Stewart F. Grossman (the "Chapter 7 Trustee"), filed an

Assent to the Relief Requested in the Motion to Re-Open Bidding, along with a "Motion

to Withdraw Chapter 7 Trustee's Final Account and Distribution Report Certification

That the Estate Has Been Fully Administered and Application to be Discharged (TDR)."[3]

Goodwill Enterprises, Inc. d/b/a/ Auto Mall Collections ("Goodwill") filed an

Opposition to the Motion to Re-Open Bidding and a "Cross-Motion for an Order

Allowing Goodwill to Exercise Specific Performance of Its Right of First Refusal against

April Realty Trust."  Kavanagh then filed an Opposition to Goodwill's Cross-Motion.

---

[2] The Land Court correctly observed the following at the beginning of its decision:

> In 2011, one of the beneficiaries of the Realty Trust, non-party Daniel
> Corbett, voluntarily filed for Chapter 7 bankruptcy, and in August 2012, his
> 50% beneficial interest in the Realty Trust was sold by the Chapter 7
> bankruptcy trustee to April Realty. The other 50% beneficial interest in the
> Realty Trust remains with [William F.] Garland. Goodwill [Enterprises,
> Inc.] argues that the sale of the beneficial interest to April Realty in the
> bankruptcy action triggered its ROFR contained within its lease for the
> Property, and that it was not given notice of the sale or extended any offer
> to match the terms.

2017 WL 4801104, at *1.

[3] The TDR reveals that the Trustee collected $309,313.34 in gross receipts; abandoned
assets valued at $1,028,681.91 (without deducting any secured claims); did not administer
exempt assets totaling $327,168.09; made distributions to the holders of secured and
unsecured priority claims, totaling $106,482.17; and paid expenses of administration
totaling $193,581.17.  The Trustee made no distributions to the holders of unsecured
nonpriority claims which totaled in excess of $2.5 million.  According to the Chapter 7
Trustee "Claims Discharged Without Payment" totaled $5,729,401.18.

Pursuant to her Motion to Re-Open Bidding, Kavanagh requests this Court to

> [1] conduct a new auction for the Corbett Interest between April Realty and Goodwill, at which both of the parties have the opportunity to bid on the Corbett Interest until one party is unwilling to bid higher or match. This is consistent with this Court's prior statement that Goodwill would have been permitted to "make a higher offer" if it had notice (see October 26, 2015 Memorandum on Goodwill's Motion to Modify Sale Order at p. 5) and with cases such as In re Farmland Indus, supra [284 B.R. 111 (Bank. W.D. Mo. 2002)], where the holder of a right of first refusal was not merely entitled to match the original high bid . . . [and] . . . [2] grant its Motion and order that a new "open cry" auction be conducted between April Realty and Goodwill for the Corbett Interest on terms and conditions to be proposed by the Trustee.

(footnote omitted).  Kavanagh, emphasizing Goodwill's notice of the bankruptcy case and three month advance notice of a potential sale of the Debtor's interests, maintains that it would be "patently unjust for the Court to simply vacate the sale and order April Realty to assign its interests to Goodwill as Goodwill requests without conducting a new auction or sale proceeding."

In his Assent to the relief requested by Kavanagh, the Chapter 7 Trustee noted that the decision of the Massachusetts Land Court, discussed in detail below, is not binding on him or the bankruptcy estate because he was not a party to the state court litigation among William F. Garland ("Garland"), Kavanagh, and Goodwill.  Nevertheless, he proposed the following procedure to address the Land Court's decision:

> [A] re-opened bidding process that provides for alternate bids between Goodwill and Kavanaugh [sic] until one refuses to bid further. Specifically, since the winning bid by Kavanaugh [sic] that closed the bidding initially was in the amount of $250,250, the first bid in the re-opened process would belong to Goodwill – as the holder of a right of first refusal, does Goodwill wish to match Kavanaugh's [sic] bid of $250,250? If Goodwill does wish to match, the next bid would be Kavanaugh's [sic] – does it wish to increase its bid to a higher amount? If Kavanaugh [sic] does wish to increase its bid,

3

the next bid would be Goodwill's – does it wish to match this higher bid? In this way Goodwill and Kavanaugh [sic] would alternate until either Goodwill does not wish to match or Kavanaugh [sic] does not wish to increase its bid.

Goodwill vigorously opposed the Motion to Re-Open Bidding and the proposed bidding procedure outlined by Kavanagh and the Trustee, advancing a number of cogent arguments. Goodwill seeks an order requiring Kavanagh to convey the Debtor's 50% interest in the Property "in exchange for a payment by Goodwill to April Realty in the amount of $102,750.00, which represents April Realty's 2012 purchase price of $250,250.00, minus a credit in the amount of $147,500.00, which is the income that April Realty has received from the Realty Trust from 2012 to the present." In particular, Goodwill, while noting Kavanagh's potential to outbid Goodwill in a new "open cry" auction and deprivation of its right of specific performance if the bidding procedures proposed by Kavanagh and the Chapter 7 Trustee were to be adopted, stated:

> April Realty is not a creditor of the estate, nor is it entitled to any special protection from the application of Massachusetts state law simply because it purchased the Property in a sale held by this Court. April Realty purchased the Property with actual knowledge of the Lease and the fact that the Lease contained a ROFR. Under Massachusetts law, Goodwill is entitled to enforce its ROFR directly against April Realty. Furthermore, any new auction by the Bankruptcy Trustee where Goodwill is required to submit bids would actually result in a new breach of Lease, given that the Land Court has held as a matter of law that Goodwill's ROFR has already been triggered by the sale to April Realty. The Land Court's Order and Judgment awarded specific performance based upon the 2012 sale. Authorizing a new sale would invalidate the Order and render it a simple advisory opinion. Clearly, the Land Court did not intend to render an advisory opinion, and April Realty's Motion must be denied to avoid invalidating the Land Court's binding Order and Judgment.

4

Goodwill, in conclusion, requested that this Court grant its Cross-Motion for Order requiring April Realty to convey the Property to Goodwill in exchange for a payment by Goodwill to April Realty in the amount of $102,750.00.

As noted above, Kavanagh filed an Opposition to Goodwill's Cross-Motion, asserting that Goodwill's interpretation of the Land Court's decision and Order was incorrect, maintaining that it "runs counter" to the Land Court's decision to defer determination of how its right to specific performance should be enforced to this Court. Kavanagh maintains that April Realty was "merely a counterofferor who participated in a sales process over which it had no control and was never informed that a third party would be able to match its bid as part of that process," adding that "[w]hile the Land Court ultimately determined that the sale triggered Goodwill's ROFR, the issue was one of first impression and ran counter to the Trustee's position that he was selling an interest in personal property that did not implicate the ROFR." In her Opposition, Kavanagh also rejected the notion that Goodwill is entitled to a credit against the purchase price, pointing to expenses that April Realty has incurred, including legal fees associated with the capital accounts of the LLC, and taxes that it paid in connection with income received, estimating that the tax liability to April Trust's beneficiary alone would be approximately 50% of the rental income received.

Notably, in their submissions, both Kavanagh and Goodwill raise the specter of unclean hands. Kavanagh maintains that Goodwill was aware of the bankruptcy proceeding and a potential sale, despite representations to this Court that it had no constructive or actual notice of the sale and despite the affidavit filed by Nader Afoussi

5

(a/k/a John Jamali), the General Manager of Auto Mall Collections, who stated in an affidavit filed in this Court on October 9, 2015 2015, that "Goodwill never received any notice of Mr. Corbett's bankruptcy filing or the sale of Mr. Corbett's beneficial interest in the Rea1ty Trust back in 2012. The first time Goodwill even learned that Mr. Corbett's interest in the Property had been sold was in April 2015."[4]  Similarly, Goodwill points to the Land Court's finding that a party related to April Realty received a copy of Goodwill's lease with the Realty Trust containing the ROFR two years prior to the auction when that party was seeking to purchase the Property (not a beneficial interest in the Realty Trust) from the Realty Trust.[5]

In response to the parties' pleadings, this Court issued an order on December 4, 2017 requiring the submission of briefs on a variety of issues, including this Court's jurisdiction and authority to entertain the Motion to Re-Open Bidding.

## II. BACKGROUND

Determination of the parties' most recent submission requires consideration of the the Land Court's Memorandum and Order dated October 20, 2017 with respect to

---

[4] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").  Goodwill was not notified by the Bankruptcy Noticing Center of the Debtor's bankruptcy case and the Chapter 7 Trustee did not service it with the Notice of Intended Private Sale.

[5] Goodwill became a party to a lease with the Realty Trust by way of assignment from EMSAT, Inc. in November of 2007.  The lease was amended several times.  On May 8, 2009, Goodwill and the Realty Trust executed a Third Amendment to the Lease, titled "Second Amendment to Lease" (Second Amendment). This Second Amendment provided Goodwill with its current right of first refusal (ROFR), titled "Option to Buy" *See* Goodwill Enterprises, Inc. v. Garland, 2017 WL 4772603, at *3.

Goodwill's Motion for Partial Summary Judgment and Kavanagh's Cross-Motion for Summary Judgment. That decision warrants consideration of prior orders issued by this Court.

By way of background, the Trustee, on July 20, 2012, filed a Motion for Order Authorizing and Approving Private Sale of Interest in 218 Andover Street Peabody LLC and Interest in 218 Andover Street Peabody Realty Trust (the "Sale Motion"). In the Sale Motion, the Trustee stated that he had "received an offer for the Real Estate that, if accepted and if the Debtor is not liable to W. Garland based upon their capital accounts, would result in a somewhat greater recovery for the estate than the instant sale," adding "W. Garland has stated that he does not wish for the Real Estate to be sold, and the Trustee believes that the nature of the Debtor's beneficial interest in the Real Estate would result in any effort to compel a sale of the Real Estate being costly and time consuming. There is an allegation that the existing offer for Real Estate may be increased, but that has not been substantiated."

On August 28, 2012, the Court conducted a sealed bid auction, and, on August 31, 2012, the Court entered an order authorizing a sale of the Debtor's interests to Kavanagh. In conjunction with the Sale Order, Brian D. Kelly ("Kelly") and Kavanagh submitted a joint affidavit to obtain a finding that April Realty was purchasing the Debtor's interests in good faith. In their joint affidavit, Kavanagh and Kelly represented, under penalties of perjury, that "[o]n both August 21 and 28, 2012, April Realty Trust submitted its counteroffer and sealed bid respectively to purchase the Debtor's interest in the *Real*

*Property* to the Bankruptcy Court in good faith *without any consultation with* Mr. Garland or *the Debtor*."(emphasis supplied).[6]

Three years later, on August 31, 2015, Goodwill moved this Court to modify its "Order Authorizing and Approving Private Sale of Interest in 218 Andover Street Peabody LLC and Interest in 218 Andover Street Peabody Realty Trust" (the "Sale Order"), dated August 31, 2012. In its Motion to Modify, Goodwill requested "the Court [to] modify the Sale Order to reflect that pursuant to Section 363(f), the sale of the Debtor's Interest in the RE Entities [defined as 218 Andover Street Peabody LLC and 218 Andover Street Peabody Realty Trust] to the Buyer was and is subject to Goodwill's right of first refusal, which Goodwill may seek to enforce against the Buyer under applicable state law." Kavanagh opposed the Motion to Modify stating, in part, that "the Realty Trust did not receive an offer to purchase the Property [defined as the real property located at 218 Andover Street, Peabody]; rather, the Bankruptcy Trustee sold the Debtor's personal property interests in the Realty Trust and Realty LLC, which consisted of a 50% interest in each entity" . . . [and] . . . "where a debtor holds less than a controlling interest in a nominee trust, as is the case here, a sale of the Debtor's interest in the trust is a personal property interest and is not the equivalent of a sale of the trust *res*. Goodwill's right of first refusal was therefore never triggered."

---

[6] The Land Court made a specific finding that "Between December 2010 and November 2011, Corbett spoke with Kelly and informed him that he intended to file or had filed for bankruptcy and that Kelly should bid on his 50% interest in the Property." <u>Goodwill Enterprises, Inc. v. Garland</u>, 2017 WL 4801104, at *4.

With respect to the Motion to Modify, this Court ruled in pertinent part as follows:

> Based upon Goodwill's failure to surmount the "formidable hurdle" [under Fed. R. Civ. P. 60(b), made applicable to the contested matter by Fed. R. Bankr. P. 7024] applicable to its Motion to Modify the Sale Order, and the factors pertinent to permissive abstention applicable here, the Court shall enter an order allowing in part Goodwill's Motion to Modify for the limited purpose of clarifying that this Court made no determination that the Chapter 7 Trustee's sale of the bankruptcy estate's interest in the Realty Trust and the LLC triggered the right of first refusal. The Court shall make no ruling regarding, and abstains from, the dispute between the parties as to whether the sale was free and clear of Goodwill's right of first refusal. The Land Court has concurrent jurisdiction to determine whether the Chapter 7 Trustee's sale of the Debtor's 50% beneficial interest in the Realty Trust triggered Goodwill's right of first refusal, as well as determining whether Garland's proposed sale of his 50% beneficial interest in the Realty Trust to Kavanagh or her nominee, as alleged in the state court complaint, triggers Goodwill's right of first refusal.

In re Corbett, No. 11-13667-JNF, 2015 WL 6460000, at *4 (Bankr. D. Mass. Oct. 26, 2015).[7]

As a result of this Court's October 26, 2015 decision, Kavanagh, Goodwill and Garland proceeded with litigation that was pending in the Land Court.  On October 20, 2017, the Land Court ruled on 1) Goodwill's motion for partial summary judgment on Counts I and II of its complaint,[8] through which it sought a declaration that the ROFR was triggered and its lease contract breached, as well as an order for specific performance allowing it to exercise its ROFR and purchase the 50% beneficial interest in the Realty

---

[7] This Court, unlike the Trustee and Kavanagh, was uninformed as to the existence of the ROFR when it entered the Sale Order and determined that Kavanagh had purchased the Debtor's interests in the LLC and the Realty Trust from the bankruptcy estate in good faith.

[8] Goodwill filed its Verified Complaint containing four counts: Count I: breach of contract and specific performance; Count II: declaratory judgment; Count III: injunctive relief; and Count IV: breach of implied covenant of good faith and fair dealing.

Trust that was sold to April Realty from the Chapter 7 Trustee;[9] and 2) Kavanagh's cross-motion for summary judgment through which she asserted that the sale of the beneficial interest did not trigger the ROFR because it was not a transfer of the Property, and only Garland's receipt and acceptance of a bona fide offer from a third party would trigger the ROFR. The Land Court noted that Garland took "no position with respect to whether the sale of the beneficial interest to April Realty triggered Goodwill's ROFR," although he argued that "he was not required to give Goodwill notice of the sale and that any claim

---

[9] The Land Court set forth Goodwill's ROFR which was contained in the Second Amendment to the Goodwill Lease:

> Option to Buy:
>
> Landlord agrees that it will not sell the Property unless (a) Landlord has received a bona fide offer to purchase the Property; (b) Landlord has given written notice (which shall be deemed to be duly given when mailed by certified mail to [Goodwill] ) stating the name and address of the offeror and the terms and conditions of said bona fide offer and the encumbrances subject to which the Property or an [sic] part thereof, are to be conveyed and containing an offer by Landlord to sell the same to Tenant on the same terms and conditions as said bona fide offer; and (c) Tenant has not within fifteen (15) days after the giving of such notice, mailed or otherwise given Landlord written notice that he elects to purchase the same in accordance with said offer. In the event that Tenant shall not give such notice of election to purchase within the time above specified, such purchase as hereinabove provided, then Landlord shall be free thereafter to sell and convey the property or such part thereof covered by the offer to the offeror named in the Landlord's notice at a price not lower than that specified therein . . .

2017 WL 4801104, at * 3.

for a declaratory judgment that the ROFR would apply to a hypothetical future sale of the Garland Interest should be dismissed as there is no current intention of selling the Garland Interest." Goodwill Enterprises, Inc. v. Garland, 2017 WL 4801104, at *1.

In its decision, the Land Court declared that Goodwill has the right to specific performance of its ROFR. The Land Court determined that, because a certificate of termination was filed with respect to 218 Andover Street Peabody, LLC, the beneficial interests in the Realty Trust were owned equally by Garland and Corbett. Id., at *4. The Land Court further found that in late 2010, Kelly, who was the Manager of April Danvers Series of Kelly Realty Series LLC, the beneficiary of April Realty, entered into negotiations with Corbett to purchase the Property in its entirety from the Realty Trust and that during those negotiations April Realty received a copy of Goodwill's lease with the Realty Trust. Notably, Kelly's attorney drafted a purchase and sale agreement for the Property, which provided that one of the real estate trusts that Kelly managed would pay $1,600,000.00 to the Realty Trust for the entire Property. Id. at *4.

The Realty Trust did not accept the offer at that time, but between December of 2010 and November 2011, a period spanning the date upon which Corbett commenced his Chapter 7 case (i.e., April 22, 2011), Corbett advised Kelly to bid on his 50% interest in the real property. Id.

The Land Court recounted that on July 31, 2012, the Chapter 7 Trustee filed and served a Notice of Intended Private Sale, Deadline for Submitting Objections and Higher Offers and Hearing Date with respect to the sale of Debtor's interests in 218 Andover Street Peabody LLC and the Realty Trust to Miriam Garland, Garland's spouse. Thus, at

11

the time that the Notice of Intended Private Sale was filed in the bankruptcy court, the

Trustee, Kavanagh (or at least the Manager of the beneficiary of April Realty, i.e., Kelly,

and Garland were aware of the ROFR.[10]    In addition, an attorney for Goodwill, John

Keilty, Esq., was aware that Corbett had filed a bankruptcy petition and that the sale of

Corbett's interest was a possibility.  Id. at *4-*5.  Indeed, Attorney Keilty informed counsel

to the Garlands that Goodwill had an option to purchase. Id. at *5.

> The Land Court framed the issues before it as follows:
>
> The issue before this Court is whether the Bankruptcy Trustee's sale of
> Corbett's 50% beneficial interest in the Realty Trust to April Realty
> constituted a sale of real property, and whether the sale triggered
> Goodwill's ROFR. Resolution of this issue requires determining whether (a)
> the sale by a bankruptcy trustee of a beneficial interest in a nominee trust
> owning real estate is the equivalent of a transfer of title to the real estate and
> (b) the sale of a beneficial interest in bankruptcy proceedings is subject to a
> right of first refusal.

Id. at *7.  The Land Court determined that because Garland and Corbett each held a

controlling beneficiary interest in the Realty Trust, the Debtor's interest was equivalent

to an interest in the real property as tenant in common with Garland, "adding "[t]he

conveyance of the Corbett Interest from the Bankruptcy Trustee to April Realty was the

sale of a controlling interest in the Realty Trust, which means that it was equivalent to a

transfer of title in real estate, namely in the Property, not simply an assignment of a

---

[10] As noted above, the Land Court found that April Realty had a copy of Goodwill's lease
in 2010. 2017 WL 4801104 at *4.  Counsel to the Trustee in an email, dated November 11,
2011, to Athan Vontzalides regarding the purchase and sale agreement for the Property
stated in pertinent part:  "Please note that the period for exercising the right of first refusal
under the lease is 30 days." See Ex. E to Goodwill's Opposition and Cross-Motion.

personal property interest. The Bankruptcy Sale Order effectively sold a 50% undivided interest in the Property to April Realty." Id. at *9.

Following a review of the law applicable to rights of first refusal, the Land Court also determined:

> [W]hen Corbett filed for bankruptcy, the Bankruptcy Trustee stepped into Corbett's shoes and became a "Landlord" of the Property, with the ability to receive offers and sell Corbett's interest in the Property.  Goodwill's ROFR is binding on the Bankruptcy Trustee.
>
> The Bankruptcy Trustee held an auction for the sale of the Corbett Interest in the Property, at which April Realty was the highest bidder. Kelly and Kavanagh submitted an affidavit in order to obtain a finding from the Bankruptcy Court that April Realty was purchasing the Corbett Interest in good faith, i.e., that April Realty made a bona fide offer to purchase the Property. The Bankruptcy Sale Order approved April Realty's offer to purchase and authorized the sale of the Corbett Interest. *April Realty's approved bid was a bona fide offer to the Bankruptcy Trustee standing in the shoes of the Landlord, and triggered the ROFR. The sale to April Realty should not have been approved without providing notice and an opportunity for Goodwill to purchase the Corbett Interest in the Property for the amount matching April Realty's offer.*

2017 WL 4801104, at *10 (emphasis supplied).   The Land Court rejected various arguments proffered by Kavanagh.  In particular, it rejected the notion that a general awareness that the Debtor intended to file a bankruptcy petition (or that a sale was contemplated) satisfied the specific notice provisions set forth in the ROFR or provided Goodwill with actual or constructive notice of the sale.   It stated:

> The ROFR states that Goodwill is to be provided with "written notice (which shall be deemed to be duly given when mailed by certified mail to [Goodwill]) stating the name and address of the offeror and the terms and conditions of said bona fide offer and the encumbrances subject to which the Property or an [sic] part thereof, are to be conveyed and containing an offer by Landlord to sell the same to Tenant on the same terms and conditions as said bona fide offer." No notice by certified mail was provided

to Goodwill and this email was not sent to or copied to any employee or officer of Goodwill. The email did not provide Goodwill with notice of any scheduled sale or bona fide offer, and did not set forth any terms or conditions of an offer. The email was sent long before a bona fide offer was made by any bidder on the Property. It was sent at time when questions remained regarding how Corbett's assets were legally held and the Bankruptcy Court had not yet made a determination as to which assets were actually going to be sold. "The requirement that triggering offers be bona fide serves to disable property owners from extinguishing a right of first refusal by simply relaying vague offers that may include indefinite terms from unidentified third parties." Uno Restaurants, Inc., 441 Mass. at 383. Attorney Frey's email fails to present even a vague offer and, therefore, cannot constitute constructive notice of a sale that would have triggered trigger [sic] Goodwill's ROFR.

2017 WL 4801104, at *11. The court concluded that "the Bankruptcy Trustee was the person with the obligation to notify Goodwill of the auction sale of the Corbett Interest," id. at *12, and that the Trustee's failure to notify Goodwill was a breach of the Lease. Id. The Land Court then stated the following:

This breach voids the sale and gives Goodwill the right to specific performance of the ROFR. "A completed sale to a third party does not extinguish the lessee's right of first refusal. Rather, the lessee in such circumstances is entitled to exercise the option upon notice of the sale, and may enforce the option through an action for specific performance. The option may be specifically enforced against the grantor, or in the alternative, a grantee who took with actual or constructive notice of the lessee's interest." Stone v. W.E. Aubuchon Co., 29 Mass. App. Ct. 523, 526 (1990), citing Tucker v. Connors, 342 Mass. 376, 382–383 (1961); Greenfield Country Estates Tenants Assoc., Inc. v. Deep, 423 Mass. 81, 89 (1996) ("[the] holder [of a right of first refusal . . .] may enforce the right in an action of specific performance against a third party who purchased with notice of the option"); Roy, 404 Mass. at 71; Parkhurst v. Maynard, 285 Mass. 59, 62–63 (1933). "'Specific performance, being an equitable remedy, must be asserted promptly unless there are circumstances which would excuse prompt action.'" Stone, 29 Mass. App. Ct. at 527, quoting Abdallah v. Abdallah, 359 F.2d 170, 174 (3d Cir. 1966). See McDonald's Corp. v. Lebow Realty Trust, 710 F. Supp. 385, 388–389 (D. Mass. 1989) (holding that notice of a third-party offer to purchase requires a lessee holding both a right of first refusal and a fixed-price option to purchase to exercise one or the other promptly

to avoid waiver of both), *aff'd*, 888 F.2d 912 (1st Cir. 1989). As discussed above, Goodwill did not waive its ROFR, and by bringing this action upon receiving notice of the sale Goodwill promptly asserted its right to specific performance of the ROFR. How specific performance is to be enforced in the circumstances of this sale, in the context of the bankruptcy case, is a question best left to the Bankruptcy Court.

2017 WL 4801104, at *12.

## III. DISCUSSION

A. <u>Responses to the Court's December 4, 2017 Order</u>

Following the filing of the Motion to Re-Open Bidding and related documents, the Court, on December 4, 2017, ordered the parties to submit briefs addressing a variety of potential issues owing to "a puzzle that defies simple resolution" arising from the Land Court's decision relating to the Sale Order based upon the summary judgment motions submitted by Kavanagh and Goodwill, the shifting positions of the parties, and competing bankruptcy policies, namely the finality of court orders and maximization of distributions to creditors. The Court specifically directed the parties to address the nature of this Court's jurisdiction and authority to entertain the Motion to Re-Open Bidding, as well as whether the Sale Order should be vacated.

In her Supplemental Memorandum, Kavanagh specifically argued that this Court should vacate the Sale Order and permit the Chapter 7 Trustee to initiate an adversary proceeding to obtain authority to sell the real property in its entirety, subject to Goodwill's ROFR. Kavanagh stated:

A sale of the entire Property will result in a significantly greater financial recovery for the estate than would be received if the Court merely accepted further bids for the Debtor's 50% beneficial interest in the Realty Trust. As of January 2018, the balance due on the mortgage that encumbers the

Property is approximately $917,000, approximately $220,000 less than what it was at the time of the sale of the Corbett Interest. Affidavit of Brian Kelly (Kelly Affidavit"), ¶ 2. In addition, the fair market value of the Property is believed to be significantly higher than it was in 2012, given the increase in property values in the area over the past five years. As evidence of the value that the estate would receive from a sale of the Property as a whole, April Realty has committed to the Trustee that it will submit a bid of no less than $1,800,000 for the Property. Id. at ¶ 1. If this was the only bid submitted it will result in the Trustee recovering another approximately $200,000 for the estate. There would be approximately $900,000 in equity to divide between the estate and the Garlands and, after crediting April Realty with its original bid amount of $250,250, there will be approximately $200,000 left for the estate. It is conceivable that through a competitive bidding process the ultimate sale price for the property would be greater than $1.8 million, with 50% of that overage increasing the funds available for distribution to creditors. Accordingly, the Trustee will be able to satisfy the requirement under §363(h)(2) that the sale of the entirety will yield significantly more for the estate than the sale of the Corbett Interest. Also, since this is commercial income property, the benefit to the estate from the sale outweighs any detriment to the co-owners.

(footnote omitted).

The Chapter 7 Trustee in his Supplemental Memorandum endorsed Kavanagh's position that the Sale Order be vacated and outlined the parameters of an "Agreement Regarding Consequences of Vacating Order Authorizing and Approving Private Sale of Interest in 218 Andover Street Peabody LLC and Interest in 218 Andover Street Peabody Realty Trust" (the "Kavanagh Agreement").[11]  Both Goodwill and the Chapter 7 Trustee

---

[11] The Chapter 7 Trustee stated:

In the Kavanagh Agreement, Kavanagh agrees if the Sale Order were vacated, she would not receive back her $250,250.00 except from sale proceeds received by the bankruptcy estate (or net income to the bankruptcy estate from the Property) and that she will not receive any interest or costs or any administrative or other claim in addition to such $250,250.00. She also agrees that if the bankruptcy estate conducts a sale of the Debtor's beneficial interest in the Realty Trust /Property, then she will

emphasize that Goodwill will have the right to exercise its ROFR as directed by the Land Court under their latest proposal.

Upon consideration of all the parties' submissions, the Court concludes that there are only two options: 1) entry of an order vacating the August 31, 2012 Sale Order, or 2) entry of an order enforcing the ROFR. The initial re-opened bidding procedure proposed by the Chapter 7 Trustee requiring a "bidding war" by Kavanagh and Goodwill simply ignores the import of the ROFR. Goodwill is not required to bid under the ROFR; the Trustee was required to comply with the terms of the ROFR by giving Goodwill written notice by certified mail "stating the name and address of the offeror and the terms and conditions of said bona fide offer and the encumbrances subject to which the Property or any part thereof, are to be conveyed and containing an offer by Landlord to sell the same to Tenant on the same terms and conditions as said bona fide offer." The Trustee failed to give Goodwill the required notice, and the Land Court has ruled that the ROFR was triggered upon this Court's approval of April Realty's bid in 2012 and has entered a judgment for specific performance. Enforcement of that judgment under the two scenarios set forth above implicates this Court's jurisdiction.

---

bid at least $300,000.00, leaving at least an additional $49,750.00 for the bankruptcy estate, even after return to her of her original sale proceeds, if the Sale Order were vacated.

The Kavanagh Agreement also addresses the possibility of sale of the Property under 11 U.S.C. § 363(h). The Chapter 7 Trustee agrees that if the Sale Order were vacated then the Chapter 7 Trustee will file a § 363(h) adversary proceeding against W. Garland seeking to sell the entire property.

B. Jurisdiction

The scope of bankruptcy jurisdiction is set forth in 28 U.S.C. § 1334.  *See* New Eng.

Power and Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. &

Marine, Inc.), 292 F.3d 61, 66 (1st Cir. 2002). Section 1334 provides that the district courts

shall have original but not exclusive jurisdiction of all civil proceedings "arising under"

title 11, "arising in" title 11, and "related to" cases under title 11. 28 U.S.C. 1334(b). The

district courts may, in turn, refer any or all of such proceedings to the bankruptcy judges

for the district, which it has done in the District of Massachusetts. 28 U.S.C. § 157(a); L.R.

D. Mass. 201.

> A bankruptcy court's decision to interpret and enforce a prior sale order
> falls under this formulation of "arising in" jurisdiction. An order
> consummating a debtor's sale of property would not exist but for the Code,
> see 11 U.S.C. § 363(b), and the Code charges the bankruptcy court with
> carrying out its orders, *see* id. § 105(a) (providing that bankruptcy court
> "may issue any order, process, or judgment that is necessary or appropriate
> to carry out the provisions of this title"). Hence, a bankruptcy court "plainly
> ha[s] jurisdiction to interpret and enforce its own prior orders." Travelers
> Indem. Co. v. Bailey, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009);
> *see* Millenium Seacarriers, 419 F.3d at 96 ("A bankruptcy court retains post-
> confirmation jurisdiction to interpret and enforce its own orders,
> particularly when disputes arise over a bankruptcy plan of reorganization."
> (quoting Petrie Retail, 304 F.3d at 230)).

In Matter of Motors Liquidation Co., 829 F.3d 135, 153 (2d Cir. 2016), *cert. denied sub nom.*

Gen. Motors LLC v. Elliott, __ U.S. __, 137 S. Ct. 1813 (2017).  *See also* Gupta v. Quincy

Med. Ctr., 858 F.3d 657, 663 (1st Cir. 2017) ("Bankruptcy courts—like all federal courts—

18

may retain jurisdiction to interpret and enforce their prior orders."); Heaney v. Lamento
(In re Whiz Kids Dev., LLC), 576 B.R. 731, 752-52 (Bankr. D. Mass. 2017) (same).

C. Good Faith Purchaser

The Court prefaces the following discussion by observing that, pursuant to 11
U.S.C. § 363(m),[12] appellate jurisdiction over an unstayed sale order issued by a
bankruptcy court is limited to the narrow issue of whether the property was sold to a
good faith purchaser. In re Motors Liquidation Co., 428 B.R. 43, 53 (S.D.N.Y. 2010) (citing,
inter alia, Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.), 600 F.3d
231, 247–48 (2d Cir.2010); Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 105 F.3d 837,
839 (2d Cir.), cert. denied, 520 U.S. 1196, 117 S.Ct. 1552, 1553, 137 L.Ed.2d 701 (1997)). The
United States Court of Appeals for the First Circuit in Canzano v. Ragosa (In re
Colarusso), 382 F.3d 51 (1st Cir. 2004), stated that the appellant, Ragosa, could not
challenge the bankruptcy court's power to sell land pursuant to 11 U.S.C. § 363(b) because
she failed to adhere to the correct procedures. It observed:

> After the sale, Ragosa did not appeal the sale order or obtain a stay of the
> sale. Under 11 U.S.C. § 363(m), a sale to a third-party purchaser acting in
> good faith may not be reversed on appeal unless the aggrieved party
> obtains a stay of the sale. Anheuser–Busch, Inc. v. Miller (In re Stadium

---

[12] Section 363(m) provides:

> [T]he reversal or modification on appeal of an authorization ... of a sale or
> lease of property does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in good
> faith, whether or not such entity knew of the pendency of the appeal, unless
> such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Mgmt. Corp.), 895 F.2d 845, 847 (1st Cir. 1990). Without the stay, this court has no power to fashion a remedy because we cannot undo the sale, even if we were to find that the authorization was erroneous. Id. As we have held:

> Section 363(m) does not say that the sale must be proper under § 363(b); it says the sale must be authorized under § 363(b). There is no doubt that when the bankruptcy court authorized the sale ... it was acting under § 363(b). At this juncture, it matters not whether the authorization was correct or incorrect. The point is that the proper procedures must be followed to challenge an authorization under § 363(b).

Id. at 849 (quoting In re Sax, 796 F.2d 994, 997–98 (7th Cir. 1986) (emphasis in original)); accord In re Continental Airlines, 91 F.3d 553, 570 (3d Cir.1996) ("Unless the sale is stayed pending appeal, the transaction survives even if it should not have been authorized in the first place").

While this case is a collateral attack rather than an appeal, the principle of finality embodied in § 363(m) still applies. This principle "reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids." Tri–Can, Inc. v. Fallon (In re Tri–Can, Inc.), 98 B.R. 609, 618 (Bankr. D. Mass. 1989) (holding that § 363(m) only applies on its face to appeals; however, the finality policy it embodies applies in other circumstances). After the time for appeal had passed, the sale may only be challenged, if at all, in accordance with the provisions of Rule 60(b) of the Federal Rule of Civil Procedure. Matter of Edwards, 962 F.2d 641, 643 (7th Cir.1992); Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60 to cases brought under Bankruptcy Code). Ragosa neither invokes Rule 60(b) nor makes an attempt to show that the requirements of Rule 60(b) have been met.

In re Colarusso, 382 F.3d at 61- 62 (footnote omitted).  As the First Circuit emphasized,

the principle of finality is paramount and sale orders, such as the August 31, 2012 Sale

Order, may only be challenged under Rule 60(b).  *See also* In re Edwards, 962 F.2d 641,

643 (7th Cir. 1992) ("Cases that allow rescission, such as M.R.R. Traders [Inc. v. Cave

Atlantique, Inc., 788 F.2d 816 (1st Cir. 2986)], do not always mention this deadline—that

a motion to rescind the sale is untimely after the judgment in the district court has become

final, save as allowed by Rule 60(b). But there is no doubt that it exists, and in <u>M.R.R.</u> <u>Traders</u> itself the motion to reconsider was made only days after the sale had been approved.").

Upon consideration of those decisions, the Court recognizes the irony associated with the arguments advanced by Kavanagh and the Chapter 7 Trustee to vacate the Sale Order, an order which would be immune from challenge on appeal.  The Sale Order can only be vacated under Rule 60(b), because "[t]he purpose of section 363(m) is to maximize the sale price of estate assets by providing assurances to the purchaser of the finality of the sale by eliminating the prospect of litigation concerning claims to the property." <u>In re</u> <u>GSC, Inc.</u>, 453 B.R. 132, 180 (Bankr. S.D.N.Y. 2011) (citing <u>Licensing by Paolo, Inc. v.</u> <u>Sinatra (In re Gucci)</u>, 126 F.3d 380, 385 (2d Cir.1997)).

As noted by the court in <u>GSC, Inc.</u>,

A "good-faith purchaser" is "one who purchases the assets for value, in good faith and without notice of adverse claims." A purchaser's good faith is shown "by the integrity of his conduct during the course of the sale proceedings." The absence of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

<u>Id.</u> (citations omitted).  The New York bankruptcy court added:

The focus of the good-faith analysis is on "the purchaser's conduct in the course of the bankruptcy proceedings[,] . . . [which includes] the purchaser's actions in preparation for and during the sale itself." The purchaser is prohibited from engaging in any fraudulent or collusive actions that are "specifically intended to affect the sale price or control the outcome of the sale." Thus, notwithstanding the timing of the questionable conduct, "the relevant inquiry [remains] whether that conduct was intended to control the sale price or take unfair advantage of prospective bidders."

Id. at 180-81 (citations omitted).  Other courts have described the inquiry by stating that a good faith purchaser is one who purchases without notice of prior adverse claims.  SHF Holdings, LLC. v. Allamakee Co. (In re Agriprocessors, Inc.), 474 B.R. 896, 900 (Bankr. N.D. Iowa 2012).  Nevertheless, that statement fails to distinguish between constructive or implied notice and actual notice.  Id. The court in Agriprocessors concluded that actual knowledge would prevent a bidder from acquiring bona fide purchaser status.  Id. at 901.[13]  The court quoted from a decision of the United States Supreme Court:

> A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, *where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another.*

In re Agriprocessors, Inc., 474 B.R. at 902 (citing Slaughter's Adm'r v. Gerson, 80 U.S. 379, 383, 13 Wall. 379, 20 L.Ed. 627 (1871)). (emphasis supplied).

---

[13] The Iowa bankruptcy court cited with approval the test set forth in Stearns v. Woolard (In re Laughinghouse), 51 B.R. 869 (Bankr. E.D.N.C. 1985), namely

> A good faith bidder without notice or knowledge who reasonably relies on a trustee's or auctioneer's representation that property is being sold "free of all liens and encumbrances" should not be compelled to complete the sale if it is determined that the property being sold is subject to material liens or encumbrances.

In re Agripprocessors, Inc., 474 B.R. at 896, 901-902 (quoting In re Laughinghouse, 51 B.R. at 876).

Although the Trustee and Kavanagh would have this Court vacate the Sale Order and essentially "start over," this time with adequate notice to Goodwill so that it might elect to enforce its ROFR by matching a winning bid (presumably Kavanagh's), following the filing of a complaint under 11 U.S.C. § 363(h) against Garland, none of the parties have explicitly challenged Kavanagh's status as a good faith purchaser, although Goodwill has argued that Kavanagh has unclean hands.  Kavanagh too has raised the issue of unclean hands, stating the following in its Opposition to Goodwill's Cross-Motion,

> April Realty has not engaged in any conduct that is inequitable or was taken in bad faith. Upon receiving notice that the Trustee intended to sell the Corbett Interest to Miriam Garland and was soliciting counteroffers, April Realty submitted a counteroffer and was ultimately the high bidder at the auction. It makes no difference that a party related to April Realty received a copy of Goodwill's Lease two years prior to the auction when that party was seeking to purchase the real property (not a beneficial interest in the Realty Trust) from the Realty Trust. April Realty was not a party to the Lease and had no obligation under the ROFR to notify the tenant of the Trustee's auction. Not only did the Land Court find no fault on the part of April Realty with respect to providing notice, it went one step further in its decision, holding that the Landlord, William Garland, had no obligation to notify Goodwill of the sale, as that was the Trustee's obligation in the context of the bankruptcy.

As noted above and by the court in Thomas v. Namba (In re Thomas), 287 B.R. 782, 785-86 (B.A.P. 9th Cir. 2002), "If an issue regarding "good faith" arises after the § 363(b) sale order is entered, regardless of whether the court initially made a "good faith" finding, the appropriate procedure for addressing the issue is provided by Federal Rules of Civil Procedure 59 and 60, which apply in bankruptcy by virtue of Federal Rules of

Bankruptcy Procedure 9023 and 9024." In the absence of such a motion, Kavanagh's status of a good faith purchaser supports the finality of the Sale Order.

D. Rule 60(b) Relief

Notably, neither Kavanagh nor the Trustee explicitly invoked Rule 60(b) in their submissions to this Court. Were the Court to deem their submissions, whether to re-open bidding or to vacate the August 31, 2012 Sale Order, to be requests for relief under Rule 60(b), the Court denies those requests. Rule 60(b) provides in pertinent part the following:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .
>
>     (4) the judgment is void; . . . or
>
>     (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b), made applicable to this contested matter by Fed. R. Bankr. P. 9024 and Fed. R. Bankr. P. 9014.[14]

1. Rule 60(b)(4)

According to the Supreme Court in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010),

> [a] void judgment is a legal nullity. Although the term 'void' describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes

---

[14] The other reasons set forth in Rule 60(b)(1), (2), and (3) are time barred, *see* Fed. R. Civ. P. 60(c), and subsection 60(b)(5) is inapplicable.

final. The list of such infirmities is exceedingly short; otherwise, Rule
60(b)(4)'s exception to finality would swallow the rule."

Id. at 270 (citations omitted).  The Supreme Court in Espinosa added that a judgment is

not void if it is erroneous and that a Rule 60(b)(4) motion is not a substitute for a timely

appeal.  Id. at 271 (citations omitted).  It concluded that "Rule 60(b)(4) applies only in the

rare instance where a judgment is premised either on a certain type of jurisdictional error

or on a violation of due process that deprives a party of notice or the opportunity to be

heard."  Id. (citations omitted).  In Espinosa, the Supreme Court refused to expand "the

universe of judgment defects that support Rule 60(b)(4) relief," id. at 273, adding "Rule

60(b)(4) strikes a balance between the need for finality of judgments and the importance

of ensuring that litigants have a full and fair opportunity to litigate a dispute."  Id. at 276.

Thus, a judgment is void only if the court entering the judgment lacked jurisdiction to do

so or acted in a manner inconsistent with due process.  Id. See also In re Edwards, 962 F.2d

641, 644 (7th Cir. 1992).

There can be no question that this Court had core jurisdiction and authority to

enter the Sale Order.  See 28 U.S.C. §§ 157(b)(2)(N), 1334.  The only issues are the effect of

the lack of notice provided to Goodwill and the effectuation of the specific performance

remedy afforded it by the Land Court.  The due process clause of the Fifth Amendment

requires that notice be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and to afford them an opportunity to

present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314

(1950).  As the court observed in <u>In re Farmland Indus., Inc.</u>, 284 B.R. 111 (Bankr. W.D.

Mo. 2002), *aff'd*, 289 B.R. 122 (B.A.P. 8th Cir. 2003),

> Due process requires that before a party suffers permanent legal detriment
> to a property interest resulting from some state action, that party generally
> must be accorded notice and an opportunity to be heard. <u>Tulsa Professional
> Collection Services, Inc. v. Pope</u>, 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99
> L.Ed.2d 565 (1988); <u>In re Argonaut Financial Services, Inc.</u>, 164 B.R. 107, 111
> (N.D.Cal.1994). The loss of a cause of action or a potential property interest
> can be sufficient for requiring notice to satisfy due process. <u>Tulsa
> Professional</u>, 485 U.S. at 485, 108 S.Ct. at 1344. The notice required depends
> on the factual context in which it is to be given. <u>Center Wholesale</u>, 759 F.2d
> at 1448. However, as a general rule, "actual notice is a minimum
> constitutional precondition to a proceeding which will adversely affect the
> liberty or property interests of any party, whether unlettered or well versed
> in commercial practice, if its name and address are reasonably
> ascertainable." <u>Tulsa Professional</u>, 485 U.S. at 485, 108 S.Ct. at 1344 (quoting
> <u>Mennonite Board of Missions v. Adams</u>, 462 U.S. 791, 800, 103 S.Ct. 2706,
> 2712, 77 L.Ed.2d 180 (1983)).

<u>In re Farmland Indus., Inc.</u>, 284 B.R. at 117 (footnote omitted).

The facts adduced in this Court and in the Land Court establish that only

Goodwill's due process rights were implicated as it did not receive notice of the Trustee's

Notice of Intended Private Sale or notice in accordance with its ROFR.  Goodwill suffered

detriment when the Trustee failed to apprise it of his intent to sell the Debtor's property

interests in the LLC and the Realty Trust along with the date and time of the hearing on

objections and counteroffers so that it could protect the contractual rights under its lease

with respect to its ROFR.  Certainly if its voice had been heard at the hearing on August

28, 2012 the results in this case might well have been different.  Although its counsel and

a manager had a general awareness of the bankruptcy case, because it was not a creditor

of the Debtor, it did not receive any specific information about the case.   It had no

obligation under the ROFR other than to elect to exercise its rights following receipt of notice in accordance with the ROFR.  This Court, however, concludes that although Goodwill's due process rights may have been violated by the absence of notice, it has not suffered *permanent* legal detriment as this Court made no ruling regarding, and indeed abstained from, the dispute between the parties as to whether the sale of the Debtor's interests in the LLC and Realty Trust were free and clear of Goodwill's ROFR.  *See* In re Corbett, No. 11-13667-JNF, 2015 WL 6460000, at *4 (Bankr. D. Mass. Oct. 26, 2015). Moreover, the Land Court has determined that it is entitled to specific performance. Thus, because Goodwill was not permanently deprived of an interest protected by the Fifth Amendment in August of 2012, the Sale Order is not void, and any due process violation was remedied when Goodwill obtained a judgment for specific performance from the Land Court. Furthermore, it does not now seek, and indeed strenuously objects to, an order vacating the August 31, 2012 Sale Order.  In this regard, the parties who had notice of the ROFR in August of 2012 cannot now be heard to complain of any due process violations.

Although Kavanagh is aggrieved by the outcome of the Land Court action and Goodwill's proposal that this Court order a conveyance of the estate's interest to Goodwill, Kavanagh had no legally protected interest when it made its counteroffer, and it was not deprived of any interest as a result of lack of constitutionally mandated notice.

Neither the Trustee nor Kavanagh have explicitly sought to vacate the sale order under Rule 60(b)(4).  To the extent they have implicitly done so, the Court concludes that

the August 31, 2012 sale to Kavanagh is not void owing to either lack of jurisdiction or a

violation of due process.

The Court's ruling is supported by the decision in <u>In re Olsen</u>, 563 B.R. 899 (Bankr.

E.D. Wis. 2017), a case only distinguishable by recordation of the right of first refusal.  In

that case, the issue presented was "whether a final, non-appealable order approving a

real estate sale could extinguish a right of first refusal without affording the holder of the

right formal notice and the opportunity to object." <u>Id.</u> at 902.  According to the Wisconsin

bankruptcy court,

> Archer–Daniels–Midland Company ("ADM") purchased assets pursuant
> to a confirmed Chapter 11 plan, including real property the parties refer to
> as the Ripon Property.  When ADM later sold the Ripon Property, Country
> Visions Cooperative ("CVC") sued ADM in state court, asserting a right of
> first refusal to purchase the property. ADM asked this Court to reopen the
> Debtors' bankruptcy case to interpret and enforce the Debtors' Chapter 11
> plan and confirmation order to bar CVC's state court lawsuit. . . .
> Essentially, ADM sought a determination that the right of first refusal had
> not survived the sale.

<u>Id.</u> at 902.  The court recognized that CVC, like Goodwill, was not listed on the debtors'

mailing matrix and did not receive formal notice of the debtors' bankruptcy case.  In

addition, CVC did not receive notice relating to the sale of the debtors' assets free and

clear of its lien, and it did not receive contractual notice pertinent to its right of first

refusal, although it may have had "some inkling" that a sale might be in the works. <u>Id.</u> at

903.  The court, citing, inter alia, <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260,

271, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), <u>In re Edwards</u>, 962 F.2d 641, 644 (7th Cir. 1992),

and <u>SHF Holdings, L.L.C. v. Allamakee County (In re Agriprocessors, Inc.)</u>, 465 B.R. 822,

830 (Bankr. N.D. Iowa 2012), determined:

> Neither the timing nor the specificity requirements of the Bankruptcy Rules
> were met here. CVC simply never received written notice that the Ripon
> Property would be sold free and clear of CVC's interest.   Ambiguous
> information in a telephone call about a potential sale at a confirmation
> hearing one week away did not provide CVC with the requisite
> information, time or opportunity to protect its interest.

In re Olsen, 563 B.R. at 905.  The court also determined that ADM had constructive notice

of CVC's right of first refusal because it had received a title report, leading the court to

conclude that "ADM's attempt to paint CVC as the party who knew about and ignored

the sale as incongruous. It appears that ADM knew about CVC's interest in the Ripon

Property before the sale, but ADM chose not to ensure that CVC's interest was dealt with

in the sale." Id. at 907.  The court then considered ADM's status as a bona fide purchaser,

asking and answering the question, "does the policy of the finality of bankruptcy sales

emphasized in Edwards override CVC's rights in this instance? After considering the

facts and circumstances, the Court concludes that ADM is not entitled to enforce the

confirmation order against CVC to extinguish CVC's rights in the Ripon Property."  Id.

The bankruptcy court concluded:

> In sum, CVC was not given notice during the bankruptcy proceedings
> sufficient to satisfy due process before its rights were extinguished. ADM
> is not a bona fide purchaser as to the Ripon Property because it had actual
> and constructive knowledge of the right of first refusal. Alternatively, even
> assuming ADM was a bona fide purchaser, CVC had a different kind of
> interest at stake than the lienholder in Edwards, and the balancing test
> favors CVC. Unlike in Edwards, CVC's right can be recognized without
> invalidating the entire sale and adversely affecting innocent parties.
> Accordingly, the plan and confirmation order were not effective to sell free
> and clear of CVC's interest. Whatever interest CVC had survived the sale
> to ADM, and the confirmation order is void to the limited extent it states
> otherwise.

Id. at 909.

29

2. Rule 60(b)(6)

"Rule 60(b)(6) is a "catch-all provision" that sets a high threshold for the court to

grant relief.  <u>Giroux v. Fed. Nat. Mortg. Ass'n</u>, 810 F.3d 103, 108 (1st Cir. 2016).  "'The

high threshold required by Rule 60(b)(6) reflects the need to balance finality of judgments

with the need to examine possible flaws in the judgments.'"  <u>Id.</u> (quoting <u>Bouret–

Echevarría v. Caribbean Aviation Maint. Corp.,</u> 784 F.3d 37, 42 (1st Cir. 2015)).

> A variety of factors can help an inquiring court to strike the requisite
> balance. Such factors include the timing of the request for relief, the extent
> of any prejudice to the opposing party, the existence or non-existence of
> meritorious claims of defense, and the presence or absence of exceptional
> circumstances. This compendium is neither exclusive nor rigidly applied.
> Rather, the listed factors are incorporated into a holistic appraisal of the
> circumstances. In a particular case, that appraisal may—or may not—justify
> the extraordinary remedy of vacatur.

<u>Ungar v. Palestine Liberation Org.</u>, 599 F.3d 79, 83–84 (1st Cir. 2010), *cert. denied*, 546 U.S.

1034 (2005) (citations omitted).  With respect to sale orders, courts in the First and Eighth

circuits have sometimes utilized a sliding scale approach.  According to the court in <u>In re

Farmland Indus., Inc.</u>, 284 B.R. 111, 115–16 (Bankr. W.D. Mo. 2002), *aff'd*, 289 B.R. 122

(B.A.P. 8th Cir. 2003),

> [T]he Eighth Circuit Court of Appeals has provided guidance in cases such
> as this in <u>Four B. Corporation v. Food Barn Stores, Inc. (In re Food Barn
> Stores, Inc.)</u>, 107 F.3d 558 (8th Cir.1997) ("Food Barn"). As a general rule,
> the Court of Appeals observed that, "[t]ypically, a court will reopen
> bidding, and thereby upset the results of a properly conducted judicial
> auction, only if 'there was fraud, unfairness or mistake in the conduct of the
> sale …or ... the price brought at the sale was so grossly inadequate as to
> shock the conscience of the court.'" <u>Food Barn</u>, 107 F.3d at 564, quoting <u>In
> re Stanley Eng'g Corp.</u>, 164 F.2d 316, 318 (3rd Cir.1947), *cert. denied*, 332 U.S.
> 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948). Additionally, the Court stated that "an
> unwavering adherence to formality" was not desirable, and that a
> bankruptcy judge should not be "'shackled with unnecessarily rigid rules

when exercising the undoubtedly broad administrative power granted him under the Code.'" <u>Food Barn</u>, 107 F.3d at 564, quoting <u>Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1069 (2nd Cir.1983). A counterweight to these considerations, however, is that the court "must remain mindful of the ubiquitous desire of the unsecured creditors, and a primary objective of the Code, to enhance the value of the estate at hand." <u>Food Barn</u>, 107 F.3d at 564–65.

The Court of Appeals, following the lead of the First Circuit Court of Appeals in <u>Gil–Bern</u> [<u>In re Gil-Bern Industries, Inc.</u>, 526 F.2d 627 (1st Cir. 1975)], then adopted a "sliding scale approach" that could be followed by a bankruptcy court in determining whether to re-open the bidding at a bankruptcy estate sale. Under this sliding scale approach, "the importance of estate enhancement diminishes as an auction participant's reasonable expectations, and the gravity of finality, increase. At some point, such as when the court actually enters an order approving the sale, expectations become sufficiently crystallized so as to render it improper to frustrate anticipated results except in the limited circumstances where there is a grossly inadequate price or fraud in the conduct of the proceedings.", 107 F.3d at 565.

<u>In re Farmland Indus., Inc.</u>, 284 B.R. 115–16.

While not explicitly arguing that the Sale Order should be set aside under Rule 60(b)(6), Kavanagh and the Chapter 7 Trustee urge the Court to vacate the Sale Order because of the potential benefit to the bankruptcy estate.  The Court concludes that neither the Trustee nor Kavanagh have met the high threshold for relief under Rule 60(b)(6).  In addition, application of the sliding scale approach does not weigh in their favor.  This Court entered the Sale Order almost five and a half years ago.  Expectations are crystallized and the potential minimal dividend to unsecured creditors at this juncture cannot surmount the hurdles presented by Rules 60(b)(6).  Moreover, it is unclear to this Court to what extent any increase in a sales price for the Property would offset the costs of administration and litigation, particularly if Garland were to vigorously

contest the relief sought in an adversary proceeding under §363(h). In this regard, it is well worth noting that no party appealed the Court's decision to abstain and the Trustee chose not to intervene in the Land Court action. Accordingly, the proposal advanced by Kavanagh and the Chapter 7 Trustee suggests a last ditch effort to thwart Goodwill's exercise of its ROFR for the price paid by Kavanagh in 2012 when all parties assured this Court that the sales price was fair and reasonable.

Kavanagh, in addition to emphasizing that the bankruptcy estate would benefit from vacating the Sale Order, argues that Goodwill has unclean hands because it knew about the Debtor's bankruptcy case and did nothing to protect its rights. In Dr. José S. Belaval, Inc. v. Pérez-Perdomo, 488 F.3d 11 (1st Cir. 2007), the United States Court of Appeals for the First Circuit considered the application of the unclean hands doctrine. It stated:

> The doctrine of unclean hands, or, more archaically, the maxim that "[h]e who comes into equity must come with clean hands," Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 241, 54 S.Ct. 146, 78 L.Ed. 293 (1933), finds its roots in traditions of equity jurisprudence that predated the merger of law and equity. See id. at 244–45, 54 S.Ct. 146; see also Shondel v. McDermott, 775 F.2d 859, 867–68 (7th Cir. 1985) (discussing the relationship of the doctrine to the "moralistic . . . jurisprudence created by the Lord Chancellors of England when the office was filled by clerics") (Posner, J.). The basic premise is that when a district court considers whether or not to award equitable relief, one factor that it must consider is the extent to which the plaintiff has engaged in certain misconduct. See Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 880 (1st Cir. 1995).

> The doctrine has limits, and not all misconduct by a plaintiff will soil that plaintiff's hands. Among other things, the doctrine "only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties, that is, when the tawdry acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" Id. (quoting Keystone, 290 U.S. at 245,

> 54 S.Ct. 146). The mere fact that the "misconduct" arises from some overlapping facts is not enough. Since "relatively few plaintiffs are wholly free from any trace of arguable misconduct at least tangentially related to the objective of their suit, the right to injunctive relief . . . would have little value if the defendant could divert the proceeding into the byways of collateral misconduct." Shondel, 775 F.2d at 869.

Dr. José S. Belaval, Inc. v. Pérez-Perdomo, 488 F.3d at 15–16.

Kavanagh's unclean hands argument presupposes that Goodwill had a duty to monitor the Debtor's case, rather than await notice that the ROFR was implicated in a sale. This position misstates the contractual provision with respect to the ROFR, and, moreover, the argument is belied by the findings of the Land Court. The Land Court determined:

> Attorney Frey's email fails to present even a vague offer and, therefore, cannot constitute constructive notice of a sale that would have triggered tigger [sic] Goodwill's ROFR.
>
> To the extent that Goodwill was on notice of a pending sale, Goodwill did not waive its right to exercise its ROFR against April Realty. "'Waiver may occur by an express and affirmative act, or may be inferred by a party's conduct, where the conduct is consistent with and indicative of an intent to relinquish voluntarily a particular right [such] that no other reasonable explanation of [the] conduct is possible. . . . [W]here waiver is not explicit, it must be premised on clear, decisive and unequivocal conduct.'" Town of Brimfield v. Caron, 18 LCR 44, 52 (2010), quoting Kact, Inc. v. Rubin, 62 Mass. App. Ct. 689, 695 (2004). Goodwill's actions did not give any indication of an intent to voluntarily relinquish its ROFR. Rather, Goodwill took affirmative steps to preserve its ROFR. Attorney Keilty promptly replied to Attorney Frey's email on May 7, 2012, stating that Goodwill wanted to exercise its ROFR and reaffirming Goodwill's belief that it retained the option to purchase the Corbett Interest in the Property. The email was not a waiver.

Goodwill Enterprises, Inc. v. Garland, 2017 WL 4801104, at *11.

Goodwill similarly argues that Kavanagh has unclean hands, pointing to the inconsistent positions taken by Kavanagh in conjunction with the Motion to Modify in contrast to those set forth in the joint affidavit submitted by Kavanagh and Kelly on August 30, 2012 to obtain a finding that April Realty purchased the property in good faith. In that affidavit, they state the following: "[o]n both August 21 and 28, 2012, April Realty Trust submitted its counteroffer and sealed bid respectively to purchase *the Debtor's interest in the Real Property* to the Bankruptcy Court in good faith without any consultation with Mr. Garland or the Debtor." (emphasis supplied). Not only did they reference the purchase of real estate, Kelly indicated that he had no interaction with the Debtor, a statement that appears to be contradicted by the finding of the Land Court that the Debtor spoke with Kelly over a period of eleven months, spanning the filing of his bankruptcy petition, informing him that he should buy his 50% interest in what became property of the estate.

Moreover, and most importantly, both Kavanagh, through the Manager of the beneficiary of April Realty (i.e., Kelly), and the Trustee were aware of the ROFR before the hearing on August 28, 2012 at which April Realty was the successful bidder.[15] Neither informed Goodwill of the sale; neither informed the Court that Goodwill held an ROFR. Where the Trustee knew of the ROFR and where the Trustee stated that he had "received an offer for the Real Estate that, if accepted and if the Debtor is not liable to W. Garland based upon their capital accounts, would result in a somewhat greater recovery for the

---

[15] As noted above, Kelly is the Manager of the beneficiary of April Realty, i.e., April Danvers Series of Kelly Realty Series LLC.

estate than the instant sale," notice of the private sale to the original offeror, Miriam

Garland, would have, at a minimum, been prudent and, admittedly with the benefit of

hindsight, would have avoided years of litigation and an outcome, namely the judgment

for specific performance, that may please no one other than Goodwill, although even it

has incurred costs owing to the years of litigation.   In other words, although this Court

does not conclude that misconduct occurred in 2012, the equities underlying the doctrine

of unclean hands weigh against, not in favor of, vacating the Sale Order under Rule

60(b)(6).   Moreover, as the Land Court determined, the ROFR can be enforced against a

grantee with actual or constructive notice of the lessee's interest. *See* Greenfield Country

Estates Tenants Ass'n, Inc. v. Deep, 423 Mass. 81, 666 N.E.2d 988 (1996).

E. Specific Performance

The Land Court ruled as a matter of law the Trustee's breach of the lease by failing

to give Goodwill notice so that it could decide whether to exercise its ROFR was a breach

of the lease that voids the sale.   Goodwill Enters., Inc. v. Garland, 2017 WL 4801104, at

*12. Nevertheless, it determined that the breach gave Goodwill the right to specific

performance of the ROFR which it could enforce against either the Trustee (the grantor)

or Kavanagh (the grantee) "who took with actual or constructive notice of the lessee's

interest." Id. (citing, inter alia, Greenfield Country Estates Tenants Ass'n, Inc. v. Deep,

423 Mass. 81, 89, 666 N.E.2d 988, 993–94 (1996) (footnote omitted). [16]

---

[16] In Deep, the Supreme Judicial Court stated:

Specific performance is a proper remedy to enforce a valid option to
purchase real property. Allen v. Rakes, 359 Mass. 1, 6, 267 N.E.2d 628 (1971).

Both the Trustee and Kavanagh have proposed the manner in which Goodwill may obtain specific performance, namely through re-opening the bidding process so Kavanagh and Goodwill may bid or by vacating the Sale Order in its entirety. The Court concludes that Kavanagh and Goodwill have consented to this Court's jurisdiction to interpret its Sale Order and to enforce the Land Court's judgment. The Court, however, finds that neither Kavanagh nor the Trustee have advanced any basis in law or in equity to obtain the relief they request. The relief is unavailable under Fed. R. Civ. P. 60(b)(4) or (6). Forcing Goodwill to bid in a re-opened bidding process is entirely inconsistent with its contractual rights under its lease with respect to the ROFR, and neither the Trustee nor Kavanagh have advanced sufficient legal or equitable grounds to warrant vacating the Sale Order in its entirety. Accordingly, upon the payment of $250,250.00 by Goodwill

---

Raynor v. Russell, *supra*. Curley v. Mobil Oil Corp., 860 F.2d 1129, 1135 (1st Cir.1988) (applying Massachusetts law). On notice of receipt of a bona fide offer from a third party, a right of first refusal ripens into an option to purchase according to its terms. Roy v. George W. Greene, Inc., 404 Mass. 67, 70–71, 533 N.E.2d 1323 (1989), S.C., 408 Mass. 721, 563 N.E.2d 215 (1990). The right is not extinguished by sale to a third party with actual or constructive notice of the right. A holder is entitled to injunctive protection against sale to a bona fide purchaser, and may enforce the right in an action of specific performance against a third party who purchased with notice of the option. The third-party purchaser holds legal title, subject to the equitable obligation to convey the property to the holder of the right on receipt of payment of the required purchase price. That the transfer of the property is contingent on the payment of the purchase price adequately protects the interests of the third-party purchaser who takes with notice of the right. Tucker v. Connors, 342 Mass. 376, 382, 173 N.E.2d 619 (1961). Parkhurst v. Maynard, 285 Mass. 59, 62–63, 188 N.E. 510 (1933).

Greenfield Country Estates Tenants Ass'n, Inc. v. Deep, 423 Mass. at 89, 666 N.E.2d at 993–94. (footnote omitted).

to Kavanagh, the Trustee shall deliver a deed to Goodwill for the Debtor's one-half ownership interest in the real property located at 218 Andover Street, Peabody, Massachusetts.

As the Land Court action does not appear to be concluded (the Land Court granted Goodwill only partial summary judgment), the Court abstains from determining whether Goodwill is entitled to set off any sums representing income April Realty received from the Realty Trust from 2012 to the present.  Indeed, Goodwill recognizes that "[t]he credit does not change or impact the administration of the estate, nor does it decrease any of the payments made to creditors, which are set forth in the Trustee's Final Account."

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter an order denying Kavanagh's Motion to Re-Open Bidding and shall enter an order granting in part Goodwill's Cross-Motion for Order Allowing Goodwill to exercise Specific Performance of its ROFR against April Realty.  The Court shall also enter an order denying the Trustee's Motion to Withdraw his TDR as moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  February 12, 2018